### In re ASSETS OF PARENT INDUSTRIES, INC. and James Guerin.

**Misc. No. 90–0210.**

United States District Court,
E.D. Pennsylvania.

June 1, 1990.

Edward F. Mannino, Philadelphia, Pa., for petitioner.

Robert Goldman, Philadelphia, Pa., for government.

## MEMORANDUM

O'NEILL, District Judge.

The United States of America brought this action seeking an order pursuant to

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1963, restraining the transfer, liquidation and dissipation of funds held in Account No. 9902–93316 at the Fulton Bank in Lancaster. The United States contends that these funds are forfeitable proceeds of racketeering activity by Parent Industries, Inc. ("Parent") and James Guerin.

On March 28, 1990, I granted the United States' *ex parte* motion for a temporary order pursuant to 18 U.S.C. § 1963(d)(2) restraining the transfer, liquidation and dissipation of these funds. The United States has moved for entry of an injunction restraining these funds pursuant to 18 U.S.C. § 1963(d)(1)(B). Petitioner William Clark has moved to vacate the Order of March 28, 1990, and has filed the only opposition to the United States' motion. For the reasons discussed below, I will grant the United States' motion for an injunction and deny Clark's motion to vacate the Order of March 28, 1990.

## I. BACKGROUND

International Signal and Control Group, Inc. ("ISC") was a company engaged in the design, manufacture and sale of medium to high technology electronic military equipment and systems. In 1982 ISC first publicly sold its stock on the London Stock Exchange; in 1987, ISC merged with Ferranti PLC, the third largest British defense contractor, to become Ferranti International Signal Group. Verification of Gerard O'Callaghan ("O'Callaghan Verification"), ¶ 3; Testimony of Amy Zelnik, Hearing of May 15, 1990 ("Zelnik"), Tr. at 10–11.[1]

James Guerin founded ISC in 1971, and served as its executive chairman or chief executive officer during its independent existence. Following the merger of ISC with Ferranti, Guerin became deputy chairman of the newly formed company. Zelnik, Tr. at 10–11. Clark served as general counsel and an officer of ISC from 1983 to 1989. Memorandum of Law of Petitioner Clark, Exhibits A, C. Parent, of which Guerin was sole shareholder and chairman, was a holding company for Guerin's assets, including his ISC and Ferranti stock. Zelnik, Tr. at 11. At the time ISC merged with Ferranti, Parent held Guerin's ISC stock, totalling over 18 million shares. From the merger, Guerin received 32,908,425 shares of Ferranti stock, which he placed in Parent's control. O'Callaghan Verification, ¶¶ 8–9.

A dispute arose between Clark and Guerin concerning Clark's entitlement to salary increases, bonuses, stock options and participation in a retirement plan during his tenure at ISC. In an agreement dated March 28, 1989, Clark agreed to resign from ISC and settle his claims in exchange for various payments by Parent and ISC, including payment of $2,000,000 and the purchase of Clark's Hellam Township property by Parent. Memorandum of Law of Petitioner Clark, Exhibit C. In partial payment of its obligations under the settlement agreement, Parent paid Clark $500,-000 on April 13, 1989, and another $500,000 on May 1, 1989. Memorandum of Law of Petitioner Clark, Exhibit A.

On July 5, 1989, Clark filed Confessions of Judgment against Parent and Guerin in the Court of Common Pleas of Lancaster

---

1. Special Agent Amy Zelnik of the Internal Revenue Service and Special Agent Gerard O'Callaghan of the Federal Bureau of Investigation testified at the hearings on the present motions held on May 15 and 16, 1990. To a large extent, their testimony consisted of reporting statements made and information given to them by various ISC officials and others. Counsel for Clark objected to the admission of such testimony as hearsay. 18 U.S.C. § 1963(d)(3) specifically provides, however, that "[t]he court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence."

Counsel for Clark also argued that the sole purpose of § 1963(d)(3) is to protect against the disclosure of the identity of witnesses, a purpose not promoted in the present case since the United States identified the names of at least some of the out-of-court witnesses. Hearing of May 15, 1990, Tr. at 12. I note that the legislative history of the 1984 amendments to § 1963 identifies another reason why requiring adherence to the Federal Rules of Evidence in a preindictment restraining order proceeding may be undesirable: "the potential for damaging premature disclosure of the government's case and trial strategy." 1984 *U.S.Code Cong. & Admin. News* 3182, 3379. .

County in the amount of $1,952,738.51 for payments remaining due under the settlement agreement, as well as interest and attorney's fees. Clark subsequently attached various assets of Parent and Guerin. On August 9, 1989, Clark released these assets under an agreement which required that Guerin and Parent post $2,000,000 in an escrow account with the Court of Common Pleas of Lancaster County. Memorandum of Law of Petitioner Clark, Exhibit E. On that day, Parent placed $2,000,000 in the escrow account: $1,300,000 were proceeds from the sale by Citibank of Ferranti stock which Parent had pledged as collateral for a loan from Citibank; $700,000 came from Parent Universal, a Parent subsidiary which had bank accounts in Luxembourg. Zelnik, Tr. at 21–25.

Clark, Guerin and Parent reached an agreement in March, 1990, settling the Lancaster County actions and distributing the funds placed in the escrow account. The Court of Common Pleas of Lancaster County ordered on March 19, 1990 that the escrow funds be transferred by March 22, 1990 to Fulton Bank Account No. 9902–93316, which in turn was to be transferred to Joseph F. Roda, P.C. on March 29, 1990 for distribution to Clark and Parent in accordance with the parties' settlement agreement. Memorandum of Law of Petitioner Clark, Exhibit F. This Court's Order of March 28, 1990 restrained the Fulton Bank, Guerin, Clark, Roda and Parent from transferring, dissipating, liquidating and disposing of the funds in Account No. 9902–93316 before April 9, 1990. At the request and by agreement of the enjoined parties, this Order was extended to expire on June 4, 1990, and hearings were held on the United States' and Clark's motions on May 15 and 16, 1990. Hearing of May 15, 1990, Tr. at 6.

**2.** Clark also has moved the Court to vacate the Order of March 28, 1990 granting the United States' *ex parte* motion filed that same day. Since, by agreement of all enjoined parties, the Order of March 28, 1990 will expire at 10:00 a.m. on June 4, 1990, I will deny Clark's motion

## II. DISCUSSION

In the present motion,[2] the United States seeks entry of an injunction under 18 U.S.C. § 1963(d)(1)(B) barring the transfer, liquidation and dissipation of the funds in Fulton Bank Account No. 9902–93316 for 90 days, unless extended for good cause or an indictment or information is filed. 18 U.S.C. § 1963(d)(1) provides, in relevant part:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

> . . . . .

> (B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

>> (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

>> (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

> *Provided, however,* That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

In order to obtain a restraining order or injunction under § 1963(d)(1)(B), then, the United States must establish that:

as moot. To the extent that Clark's arguments for vacating the Order of March 28, 1990 apply to a determination of the propriety of entering an injunction under § 1963(d)(1)(B), they are considered in the discussion below.

(1) there is a substantial probability that the property in question will be subject to forfeiture; (2) failure to enter the order will result in the property's destruction, removal or unavailability for forfeiture for other reasons; and (3) the need to preserve the property's availability outweighs the hardship to any enjoined party. Upon consideration of the submissions of the United States and Clark, and of the evidence presented at the hearings held on May 15 and 16, I find that the United States has made the showing necessary for entry of the requested order.

A. *Substantial Probability that United States Will Prevail on Issue of Forfeiture*

The United States must establish that there is a "substantial probability" that it will prevail on the issue of forfeiture. Under 18 U.S.C. § 1963(a), "irrespective of any provision of State law" a person who violates 18 U.S.C. § 1962 shall forfeit:

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

 Forfeiture under § 1963 is imposed directly on an individual defendant rather than against the property itself, so that the United States is not required to trace the proceeds of a defendant's "racketeering activities to identifiable assets." *United States v. Robilotto*, 828 F.2d 940, 948–949 (2d Cir.1987), *cert. denied* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988). Because the United States must establish a § 1962 violation to obtain forfeiture under § 1963(a), it must show a "substantial probability" that it will prove a § 1962 violation in order to obtain an injunction under § 1963(d)(1)(B). According to the legislative history of § 1963(d), Congress intended the standard for issuance of a restraining order prior to the filing of an indictment or information to be "a stringent one." 1984 *U.S.Code Cong. & Admin.News* 3182, 3386.

 I find that the United States has shown that there is a substantial probability it will prevail on the issue of forfeiture regarding the funds in Fulton Bank Account No. 9902–93316. As discussed above, at 4, the evidence presented at the hearing established that the funds in this account came from Parent. On May 15, 1990, Parent entered into an agreement to plead guilty to a one count information to be filed charging a violation of 18 U.S.C. § 1962(c). Parent specifically admits in this plea agreement that the funds in Account No. 9902–93316 "are forfeitable to the United States pursuant to 18 U.S.C. § 1963(a)(1) and (a)(3)." Govt. Exh. 1, ¶¶ 2–3.

To the extent the evidence presented at the hearing and affidavits suggest that Parent has functioned as a mere alter ego of Guerin, and that the funds in Account No. 9902–93316 were Guerin's, I find that the United States has made the required showing of a substantial probability that it will prove that the funds are forfeitable proceeds of Guerin's racketeering activity. Special Agent Zelnik testified that a special task force comprised of agents from the Internal Revenue Service, Federal Bureau of Investigation, Defense Criminal Investigative Service, U.S. Customs Service and Securities and Exchange Commission has conducted an investigation of Guerin and ISC. Zelnik, Tr. at 14–15. Robert Shireman, a former ISC official, has provided the task force with evidence that Guerin directed a scheme to inflate fraudulently ISC's sales and profits by creating over $1 billion in fictitious sales and contracts from 1984 through 1989. Shireman has identified numerous contracts, including the con-

tracts referred to in ISC records as the KP, UAE or Alpha, Gamma, SASU and Damerol contracts, as completely fictitious. Zelnik, Tr. at 16. The fictitious contracts were reflected on ISC's books and records, and were relied upon by ISC's auditors when auditing ISC's financial statements. O'Callaghan Verification, ¶ 5.

The task force's investigation has shown that to perpetrate the fraud, front companies were set up, money was moved among various American and Swiss bank accounts and phony status reports were created. The fraud inflated the value of ISC's stock, attracting investors and customers. Zelnik, Tr. at 15–19. In particular, the fraud assisted ISC in obtaining a merger with Ferranti, as Ferranti relied on the falsely inflated ISC records in agreeing to the merger. O'Callaghan Verification, ¶ 16. The task force has found evidence that the Ferranti stock which Guerin received from the merger with ISC produced income for Parent and Guerin, and was used as collateral by Parent in obtaining financing. Zelnik, Tr. at 20–21. As discussed above, at 4, the funds in Account No. 9902–93316 came from a Parent subsidiary and from the sale of Ferranti stock Parent had pledged to Citibank as collateral for a loan.

■ Clark argues that the testimony and verification of Zelnik and O'Callaghan were too general and conclusory, and did not provide enough specific evidence, to establish a substantial probability that the United States will prevail on forfeiture. As noted above, however, under § 1963(d)(3) I am not bound by the Federal Rules of Evidence in what evidence and information I may receive and consider in this proceeding. To require the United States to present eyewitnesses and specific documents in a preindictment restraining order proceeding could jeopardize the grand jury's investigation and the ultimate prosecution of those whose assets are sought. While the agents' testimony and verification presented here might not be sufficient to support a conviction of Guerin under

RICO, I believe it would not be consistent with the purposes of § 1963(d) to require the United States to make such a showing to obtain a preindictment restraining order.

According to Zelnik and O'Callaghan, the task force's investigation has included interviews of various ISC officials and other sources, collection and review of documents, including bank account records and ISC documents, and preparation of analyses. Zelnik, Tr. at 10–15; O'Callaghan Verification, ¶¶ 1, 2, 4, 6, 7, 10. The testimony and verification of Zelnick and O'Callaghan summarized the findings of this investigation, and reported the statements of certain persons interviewed by the task force. I find that the agents' testimony and verification provided enough information about the sources for their information and conclusions to enable me effectively to evaluate their conclusions. I therefore find that the United States has established a substantial probability that it will show the funds in Account No. 9902–93316 to be forfeitable proceeds of Guerin's or Parent's racketeering activity.

B. *Failure to Enter Order Will Result in Property Being Destroyed, Removed from the Jurisdiction of the Court or Otherwise Made Unavailable for Forfeiture*

■ Under the agreement between Clark, Guerin and Parent settling the Lancaster County actions, the funds in Account No. 9902–93316 would have been disbursed to Clark and Parent but for this Court's Order of March 28, 1990, and will be disbursed to them on June 4, 1990 if the injunction requested by the United States is not granted. It is arguable that such distribution of funds to a third party, in and of itself, makes the funds unavailable for forfeiture under § 1963(d)(1)(B).

I need not decide that issue, however, because the United States has presented evidence Clark knew that Guerin and ISC were engaged in racketeering activity.[3]

3. As I noted during the hearing on the present motion, the United States does not contend in this proceeding that Clark personally was in-

volved in or guilty of any illegal activity, but merely that he had knowledge of such activities

O'Callaghan testified that his investigation, including interviews with ISC employees and examination of ISC documents, revealed that Clark was aware as early as 1987 that ISC and several ISC officials, including Guerin, had overstated earnings on contracts, submitted false invoices, and illegally exported military equipment to South Africa. Testimony of Gerard O'Callaghan, Hearing of May 16, 1990 ("O'Callaghan Testimony"), Tr. at 3–36; Govt. Exhs. 2–7. O'Callaghan also testified that according to Guerin, Clark used his knowledge of the illegal activities of Guerin and others at ISC to obtain Guerin's agreement to make the payments at issue in the Lancaster County actions. O'Callaghan Testimony, Tr. at 32–35; *see also* Govt. Exh. 2.

I find that Clark obtained whatever rights he may have to the funds in Account No. 9902–93316 with knowledge of the illegal activities of ISC and Guerin that had produced them, and therefore, with knowledge that they would be subject to forfeiture under § 1963(a). Because Clark was prepared to accept and invest or spend those funds in spite of his knowledge about them, I conclude that the funds would not be available for forfeiture if the requested order were not granted.[4]

C. *Need to Preserve Availability of Property Outweighs Hardship to Any Party Enjoined*

 The sole purpose identified in the legislative history of § 1963(d)(1)(B) for a preindictment restraining order "is to preserve the status quo, *i.e.,* to assure the availability of the property pending disposition of the criminal case." 1984 *U.S.Code Cong. & Admin.News* 3182, 3387. As discussed above, the circumstances of this case lead me to conclude that the requested order is necessary to preserve the availabil-

ity of the funds in Account No. 9902–93316 pending disposition of criminal proceedings against Parent and/or Guerin. On the other hand, the only hardship Clark will suffer under the requested order is the inability to use the funds, since they will remain in an interest bearing escrow account at the Fulton Bank. If I grant the United States' motion, Clark either will receive the funds after 90 days or will have the opportunity to participate in a hearing pursuant to 18 U.S.C. § 1963(*l*) prior to forfeiture following completion of the criminal proceedings against Parent and/or Guerin.

Clark contends that he is a judgment creditor under Pennsylvania law with respect to the funds in Account No. 9902–93316 by virtue of the Order of the Court of Common Pleas of Lancaster County of March 19, 1990 directing the transfer of those funds. According to Clark, his hardship as an unsatisfied judgment creditor outweighs the United States' need, which in this action is to protect Ferranti, the party allegedly defrauded by the falsified contract scheme of ISC and Guerin. Hearing of May 15, 1990, Tr. at 94–96.

Clark's argument ignores the fact that persons other than Ferranti also were defrauded by the alleged scheme to inflate ISC profits, including ISC investors and customers, whose interests the United States represents here as much as Ferranti's. More important, the United States' need to preserve the availability of the property for forfeiture is not limited by or contingent upon a third party's possible claims for restitution. Whether the United States ultimately will spend the forfeited funds to make victims whole or for any other purpose is irrelevant to a determination whether an order should be entered preserving the status quo so that forfeiture

by others. Hearing of May 16, 1990, Tr. at 65–66.

**4.** *Cf.* 18 U.S.C. § 1963(c), which concerns a third party's rights to property forfeited under § 1963(a), not restrained under § 1963(d): "All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other

than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (*l*) that he is a bona fide purchaser for value of such property *who at the time of purchase was reasonably without cause to believe the property was subject to forfeiture under this section.*" (emphasis added).

may occur in the future. In other words, the United States' "need to preserve the availability of the property" under § 1963(d)(1)(B)(ii) concerns not how the United States eventually will dispose of the property, but rather what will happen to the property if an injunction is not entered. As discussed above, I find that the United States' need outweighs the hardship to Clark because the property will not be available if I do not grant the requested order.

D. *Special Considerations for Property in Hands of Third Parties*

Clark contends that the United States cannot seek an injunction pursuant to § 1963(d)(1)(B) restraining property in the hands of a third party not under investigation for RICO violations where the defendant or party under investigation has substitute assets which could be forfeited. According to Clark, this priority rule is established by 18 U.S.C. § 1963(m), which provides:

> If any of the property described in subsection (a), as a result of any act or omission of the defendant—
> (1) cannot be located upon the exercise of due diligence;
> (2) has been transferred or sold to, or deposited with, a third party;
> (3) has been placed beyond the jurisdiction of the court;
> (4) has been substantially diminished in value; or
> (5) has been commingled with other property which cannot be divided without difficulty;
> the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

Clark argues that the priority rule was recognized by the Court of Appeals for the Second Circuit in *U.S. v. Regan*, 858 F.2d 115 (2d Cir.1988). In that case, six partners or executives in a consortium of investment companies, the Princeton/Newport Group, had been indicted under RICO. The district court granted the United States' motion for an order pursuant to 18 U.S.C. § 1963(d)(1)(A) restraining not only the individual defendants' partnership interests in the Princeton/Newport Group, but also the use by the unindicted Princeton/Newport Group of its own assets. On appeal, the Court of Appeals noted that "orders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on the third parties are available." 858 F.2d at 121. Because the sole purpose for enjoining the Princeton/Newport Group was preservation of assets equivalent to the value of the defendants' forfeitable partnership interests, the Court reasoned, "the order must have as a cornerstone a finding that the restraint of the defendants' individual assets, other than the partnership interests in the Group, is insufficient to accomplish that purpose." 858 F.2d at 121. The Court cited what is now § 1963(m)(5) and held:

> Although this provision concerns the ultimate forfeiture, it surely suggests that restraining orders entered before forfeiture should be concerned with preserving assets equivalent in value to the potentially forfeitable property, and not necessarily the precise property. We believe, therefore, that where the nature of the defendants' forfeitable property makes the imposition of a restraining order burdensome on third parties, the district court should, as an alternative, restrain assets of the defendant equal in value to that of the unrestrained forfeitable property. 858 F.2d at 121.

■ Any priority rule established by § 1963(m) and *Regan* has been satisfied here. According to Clark, § 1963(m) and *Regan* require that "[b]efore the Government will be allowed to restrain the property interests of third parties ... it must first show that the restraint of the defendant's individual assets will be insufficient to accomplish the government's purpose." Memorandum of Law of Petitioner Clark, at 29. At the hearings on the present motion, Zelnik testified that the United States will seek voluntary or mandated forfeiture of all of Guerin's assets, including those held by Parent. She also stated that

all of those assets combined would not equal the amount of losses suffered because of Guerin's and Parent's fraudulent activity, and, therefore, the amount forfeitable under § 1963(a). Zelnik, Tr. at 30–32, 36–37. Thus, the United States has made a showing, as Clark claims it must under § 1963(m) and *Regan*, that restraint of the funds in Account No. 9902–93316 is necessary because Guerin's and Parent's individual assets are insufficient to accomplish the government's purpose.

 Moreover, to the extent that *Regan* holds that § 1963(m) permits restraint of forfeitable property in the hands of a third party only if all property in the hands of a defendant has been restrained and is insufficient, I decline to adopt its reasoning. § 1963(m) does not state that other property of the defendant should be ordered forfeited in lieu of otherwise forfeitable and seizable property in the hands of a third party. As is evident from comparison of § 1963(m)(1), (3), (4) and (5), § 1963(m) concerns only situations in which otherwise forfeitable property effectively cannot be seized by the United States for one reason or another. This provision does not specifically prevent the United States from pursuing forfeiture of the types of property enumerated in § 1963(m)(1) through (5) at the same time it pursues the defendant's other property, but only assumes that it will be unable to do so. In other words, § 1963(m) merely expands the United States' ability to restrain a defendant's assets in certain specified situations, and does not purport to place corresponding limitations on the United States' ability to restrain assets in the hands of third parties. Accordingly, it

does not limit the United States' ability to seek forfeiture of those assets in the hands of third parties which effectively can be seized, such as the funds in Account No. 9902–93316.

Clark also complains that the United States has refused to acknowledge whether it has complied with the guidelines for filing motions for temporary restraining orders under § 1963(d) set forth in § 9–110.414 of the United States Attorneys' Manual. Memorandum of Law of Petitioner Clark, Exhibit H. These guidelines do not purport, however, to create any substantive rights in either defendants or third parties affected by orders issued not in compliance with the guidelines. Clark can point to no legally binding provision of these guidelines which the United States has violated in filing the present motion.

 Because I find that the United States has satisfied the requirements of § 1963(d)(1)(B),[5] I will grant its motion and enter the requested injunction.

## ORDER

AND NOW, this 1st day of June, 1990, upon consideration of the motion of the United States for an injunction pursuant to 18 U.S.C. § 1963(d)(1)(B), the motion of petitioner William Clark to vacate this Court's Temporary Restraining Order of March 28, 1990, of the supporting and opposing memoranda, and after notice to the persons appearing to have an interest in the property and hearings on May 15 and 16, 1990, it is hereby ORDERED that:

1. The motion of petitioner William Clark to vacate this Court's Temporary Re-

---

5. In his supplemental memorandum, Clark discusses the recent decision of the Court of Appeals for the Third Circuit in *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186 (3d Cir.1990). The Court of Appeals does discuss shifting of assets, harm from loss of the use of funds and the Justice Department's guidelines for the use of preindictment temporary restraining orders in its opinion. But *Hoxworth* concerns a preliminary injunction entered to protect future damages in a civil fraud and RICO action, not a preindictment restraining order under § 1963(d)(1)(B). I find that the Court of Appeals' opinion is not dispositive of any issues raised in the present motion.

At the hearings on this matter, counsel for Clark made an offer of proof concerning representations made to Joseph Roda prior to the filing of the *ex parte* request for a restraining order by the Assistant United States Attorney concerning whether the United States would seek to restrain the escrow account funds. Even if Clark could establish that such representations were made, however, it would not affect my decision regarding the present motion because the United States cannot be estopped from seeking a restraining order under § 1963(d)(1)(B) by any prior representations of an Assistant United States Attorney.

straining Order of March 28, 1990 is DE-NIED as moot.

2. The motion of the United States for an injunction pursuant to 18 U.S.C. § 1963(d)(1)(B) is GRANTED.

3. Fulton Bank, James H. Guerin, William A. Clark, Joseph F. Roda, Esquire, Parent Industries, Inc. and any of their family, employees, agents, servants, attorneys, and those persons in active concert or participation with them, are enjoined and restrained from transferring, dissipating, liquidating and disposing of funds held in Fulton Bank Account No. 9902–93316, including two million dollars ($2,000,000) and all interest thereon received from the Prothonotary of Lancaster County Court of Common Pleas, originally deposited by James Guerin and/or Parent Industries, without prior approval of the Court upon notice to the United States and an opportunity for the United States to be heard.

If any of the above-described funds already have been disbursed, those persons or entities in possession of the funds are restrained from further transfer, concealment or dissipation.

3. A copy of this Order will be served forthwith by hand, certified mail or electronic facsimile machine upon Fulton Bank, James H. Guerin, William A. Clark, Joseph F. Roda, Esquire and Parent Industries, Inc.

4. This Order will expire 90 days from the date it is entered, unless an indictment or information described in 18 U.S.C. § 1963(d)(1)(A) has been filed against James Guerin or Parent Industries, Inc., or unless the Order is extended for good cause shown. If an such an indictment or information is filed within 90 days of the date this Order is entered, the Order will remain in full force and effect.