**In re ASSETS OF Myles MARTIN, et al., Gerald D. Ditursi, David Savage, Robert Self, Jr., Bruce Ebert, William Selvagn, Self Oil Heat, Inc., Global Enterprises, Inc., Bell Fuel Corporation, Bell Fuels T/A Asco, Inc., Atlantic Oil & Heat Co., Par Sales, Inc., Asca, Inc./Nova Petroleum and Omni Petroleum.**

**Jacob Dobrer, Vyacheslav Dobrer, N.W.R. Enterprises, Inc., Grast, Inc., and American Enterprises, Inc., Appellants in No. 93–1189.**

**Gerald D. DiTursi, Appellant in No. 93–1201.**

**Nos. 93–1189, 93–1201.**

United States Court of Appeals, Third Circuit.

Argued June 11, 1993.

Decided July 26, 1993.

As Amended Aug. 27, 1993.

1352

Morvillo, Abramowitz, Grand, Iason & Silberberg, Catherine M. Foti (argued), Robert B. Buehler, New York City, for appellants Jacob Dobrer, Vyacheslav Dobrer and N.W.R. Enterprises, Inc.

Rose & Koerner, Ronald D. Rose (argued), Brooklyn, NY, for appellants Grast, Inc. and American Enterprises, Inc.

Law Office of Barry A. Cohen, Barry A. Cohen, Martinez & Kessler, Victor D. Martinez (argued), Bruce J. Kessler, Tampa, FL, for appellant Gerald D. DiTursi.

Michael J. Rotko, U.S. Atty., E.D.Pa., Sonia C. Jaipaul, Asst. U.S. Atty., Chief, Financial Litigation Div., Joel M. Friedman, Asst. U.S. Atty., Chief, Organized Crime Strike Force, Mary E. Crawley, Asst. U.S. Atty., Robert E. Courtney, Asst. U.S. Atty., Pamela Foa (argued), Asst. U.S. Atty., Philadelphia, PA, for appellee.

Before: GREENBERG, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

The penalty provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provide upon conviction for mandatory forfeiture of assets related to the criminal enterprise. 18 U.S.C. § 1963(a). The statute also provides, 18 U.S.C. § 1963(m), that certain substitute assets may be forfeitable upon conviction if assets related to the criminal enterprise are not available. The district courts are authorized by 18 U.S.C. §§ 1963(d)(1)(A) and 1963(d)(1)(B) to impose, respectively, pre-conviction and pre-indictment restraints to preserve the availability of Section 1963(a) forfeitable assets. Here, we must determine whether the RICO forfeiture provisions also permit pre-conviction and pre-indictment restraints to preserve the availability of substitute assets.[1] From the plain language of the statute, whose meaning is supported by legislative history, we conclude, contrary to the district court, that restraints to preserve the availability of substitute assets cannot be imposed prior to conviction. However, because of the district court's understandably expedited treatment of this case, it is unclear whether restraints may be issued here on the basis of the assets' connection to the alleged criminal enterprise rather than their status as substitute assets. We therefore will vacate the order of the district court and will remand the case for reconsideration of that issue and for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from the government's investigation of "daisy chain" schemes to evade federal and state excise taxes on diesel fuel. The same product, number 2 fuel oil, is used as home heating oil and diesel motor fuel. Number 2 fuel oil used as home heating oil is not subject to federal or state excise taxes; however, these taxes are imposed when it is sold as diesel motor fuel. This state of affairs encourages "daisy chain" operators to buy untaxed heating oil and pass it through various entities, some existing only on paper, to obscure responsibility for payment of excise taxes. The product eventually is sold to retailers as diesel fuel, without the payment of applicable excise taxes. The "daisy chain" operators can undercut legitimate wholesalers' prices and make inordinate profits by pocketing the amounts that should have been paid as taxes.

These consolidated appeals were brought by Gerald DiTursi (No. 93–1201) and jointly by Jacob Dobrer, Vyacheslav Dobrer, N.W.R. Enterprises, Inc., Grast, Inc., and American Enterprises, Inc. (No. 93–1189). DiTursi, other individuals, and several companies in the wholesale and retail heating-oil and fuel-oil businesses, were investigated during 1991 and 1992 by the Federal Bureau of Investigation and Internal Revenue Service, on suspicion of operating a "daisy chain." The investigation included extensive court-approved wiretaps of DiTursi's conversations about fuel-oil transactions. By late November 1992, the government was ready to execute search warrants on the oil businesses, the residences of DiTursi and other implicated persons, and the New York City offices shared by Grast, Inc. and American

---

1. Of course, the term "pre-conviction restraints" would normally be understood to subsume "pre-indictment" restraints. However, because the statute contains separate subsections setting forth differing standards for each of these types of restraints, we will refer to Section 1963(d)(1)(A) restraints as "pre-conviction restraints" and to Section 1963(d)(1)(B) restraints as "pre-indictment restraints." Sometimes we will refer to both types of restraints collectively as "pretrial restraints."

Enterprises, Inc., corporations implicated in the scheme. (The government was not yet aware ·that a third corporation, N.W.R. Enterprises, Inc., was doing business out of the same offices as Grast and American Enterprises; it learned of N.W.R. when agents executed the warrants.)

The government did not want the targets of the investigation to dissipate or hide assets that might become forfeitable under RICO. Therefore, in anticipation of executing the search warrants, the government sought an *ex parte* temporary restraining order pursuant to RICO, 18 U.S.C. § 1963(d)(2), to preserve the availability of assets of DiTursi, five other individuals, and eight fuel companies. The district court granted the *ex parte* order on November 23, 1992; the search warrants were then executed on November 24, 1992. On November 25, the government obtained an amended *ex parte* order to preserve the availability of additional assets discovered during the searches. On December 3, 1992, the government obtained a further *ex parte* restraint directed to assets of Grast, American Enterprises, N.W.R., and certain principals and owners of those corporations, *i.e.*, Jacob Dobrer, Vyacheslav Dobrer, and David Shuster. The government then moved for a pre-indictment preliminary injunction pursuant to Section 1963(d)(1)(B). To preserve the existing *ex parte* restraints pending the preliminary injunction hearing, the government obtained an order of extension for good cause shown.

The court conducted the hearing on the Section 1963(d)(1)(B) pre-indictment injunction application on February 11, 1993. The government introduced as exhibits, *inter alia*, records of fuel-oil transactions seized at the New York offices of Grast, American Enterprises, and N.W.R.; bookkeeping records of those companies; and copies of newspaper articles concerning state law-enforcement agencies' investigations of fuel-oil "daisy chains," which had been found in a file at the Grast/N.W.R./American Enterprises offices. The government also introduced affidavits of the investigating agents and pre-

sented oral testimony from FBI agent John J. Terry. The subjects of the restraints presented exhibits in support of their contention that Grast, N.W.R., and American Enterprises had *bona fide* sources of income from their legitimate businesses of exporting consumer goods to Russia and Europe generally. The attorneys for the subjects cross-examined Terry extensively, but did not present any witnesses.

On February 12, 1993, the district court, ruling from the bench, granted the government's motion for an order enjoining removal, sale, or dissipation of the subjects' assets. (J.A. 643–661). ·While recognizing that its authority to do so was not settled by any decision of the Supreme Court or of this court, the district court held that it could "restrain substitute assets [as defined in Section 1963(m) ] in the pre-indictment stage, so long as the property restrained does not exceed the profits from the enterprise." (J.A. 646). The district court also rejected DiTursi's argument that his Sixth Amendment right to counsel precluded restraint of his substitute assets. (J.A. 657). The court entered an order enumerating the restraints on February 17, 1993. (J.A. 662–670). Jacob Dobrer, Vyacheslav Dobrer, N.W.R., Grast, and American Enterprises jointly appealed from that order on February 24, 1993, and DiTursi appealed on February 26, 1993. As a matter of convenience we will refer to the order of February 17, 1993, as having entered restraints, though it would be technically correct to consider it as having entered a preliminary injunction.

· Thereafter on March 26, 1993, a grand jury in the Eastern District of Pennsylvania indicted two of the appellants, DiTursi and Jacob Dobrer, as well as numerous other persons and certain entities, by reason of the "daisy chain" scheme.[2] (Government's Supplemental App. at 1–169). Whereas the government had represented at the February 11th hearing, and the district court had found, that potential forfeitable profits from the alleged RICO scheme were in excess of $15 million (J.A. 646), the RICO forfeiture

---

**2.** By any standard the indictment is a formidable document, at least in form, as it includes 89

counts and is 169 pages in length.

counts of the indictment allege the substantially smaller sum of $6,196,242.98 as forfeitable assets. (Government's Supplemental App. at 112, 119, 126).

## II. JURISDICTION AND STANDARD OF REVIEW

### a. *Jurisdiction*

The government has raised four challenges to our jurisdiction: (1) as to the appellants who have been indicted, DiTursi and Jacob Dobrer, the order of February 17, 1993, is interlocutory and thus non-appealable; (2) the order has expired as to the unindicted appellants, Vyacheslav Dobrer, American Enterprises, Inc., Grast Inc., and N.W.R. Enterprises, Inc., and their appeals are therefore moot; (3) because David Shuster,[3] DiTursi, and Jacob Dobrer have been indicted, the restraints under Section 1963(d)(1)(B) on their assets have been continued pursuant to Section 1963(d)(1)(A), which provides for pre-conviction restraints, so that the appellants' claims are moot; and (4) Jacob Dobrer is a fugitive and thus is precluded from appealing by the fugitive disentitlement doctrine. We find the first three objections to be without merit. However, we conclude that the government's contention with respect to Jacob Dobrer is meritorious so we will dismiss his appeal.

■ The government's argument that the order of February 17, 1993, is interlocutory as to the indicted appellants, and therefore is not appealable immediately by them is against the considerable weight of several decisions on point. As recently explained by the Court of Appeals for the Fifth Circuit, "pretrial asset restraining orders are appealable as 'injunctions' under [28 U.S.C.]

3. Shuster is not an appellant.

4. We do not consider whether we would have had jurisdiction if there had been appeals from the *ex parte* restraints as that issue is not before us. Ordinarily we would not have jurisdiction over appeals from temporary restraining orders. *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1179 (3d Cir.1976).

5. We express no opinion as to the government's contention that a Section 1963(d)(1)(A) restraint automatically arises on indictment if a Section 1963(d)(1)(B) restraint is already in place. In

§ 1292(a)(1)." *United States v. Floyd,* 992 F.2d 498, 500 (1993), *citing United States v. Jenkins,* 974 F.2d 32, 34 (5th Cir.1992); *United States v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896, 900–01 (2d Cir. 1992); *United States v. Roth,* 912 F.2d 1131, 1132–33 (9th Cir.1990); *United States v. Thier,* 801 F.2d 1463 (5th Cir.1986). We find these decisions persuasive in their recognition that asset restraint orders are treated as injunctions immediately appealable under 28 U.S.C. § 1292(a)(1), and we therefore follow them.[4]

■ The government's argument that the restraints have expired as to the unindicted appellants is contradicted by the terms of the order imposing the restraints: "[t]his Order will expire 90 days from the date it is entered, unless an indictment ... has been filed against any of the Subjects, or unless the Order is extended for good cause shown. If ... an indictment ... is filed within 90 days of the date ... this Order is entered, the Order will remain in full force and effect." (J.A. 670). The order was entered on February 17, 1993, and the indictment was filed within 90 days thereafter, on March 26, 1993. Therefore, the entire order, as to all subjects of the restraints, remains in effect; it has not expired as to any of the subjects and these appeals are not moot on that basis.

■ We also reject the government's contention that the indictment of Shuster, DiTursi, and Jacob Dobrer continues all the restraints to preserve the availability of the assets in question and therefore renders the appeals moot.[5] While there might be substance to this argument if Section 1963(m) property were treated differently under Section 1963(d)(1)(A) than it is under Section

*United States v. Monsanto,* 924 F.2d 1186 (2d Cir.1991), the court required a hearing to continue an *ex parte* restraint pursuant to the pre-conviction injunction provisions of the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853(e)(1)(A), whose substantive language is in material respects identical to that of 18 U.S.C. § 1963(d)(1)(A). Because of our resolution of the issue of restraints against substitute assets, we need not at present consider what process is due an indicted defendant before Section 1963(a) assets may be restrained.

1963(d)(1)(B), we will hold that Section 1963(d)(1) limits the applicability of both pre-conviction and pre-indictment restraints to Section 1963(a) forfeitable assets. Thus, neither a pre-indictment nor pre-conviction order may be entered to preserve the availability of Section 1963(m) substitute assets. Therefore, the government's assertion that the district court's Section 1963(d)(1)(B) order has been converted to a Section 1963(d)(1)(A) order by the filing of the indictment, is irrelevant to the validity of the restraints in question. If, as we will conclude, the statute does not authorize either pre-conviction or pre-indictment restraints to preserve the availability of Section 1963(m) substitute assets, then it does not matter whether the restraints in the order of February 17, 1993, are in place by reason of Section 1963(d)(1)(A) or Section 1963(d)(1)(B).

▇ We do, however, grant the government's request to dismiss Jacob Dobrer's appeal pursuant to the doctrine of fugitive disentitlement. As recognized in *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), that doctrine involves a discretionary refusal by an appellate court to entertain an appeal on behalf of a party who has been convicted of a crime but who has become a fugitive subsequent to conviction. The rationale for dismissing fugitives' appeals usually is explained as a principle of mutuality—if a defendant is not willing to suffer the penalties of the crime, then an appellate court should not afford the defendant an opportunity to improve his or her position by challenging the validity of the conviction. *See Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876) ("[i]t is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party ... is where he can be made to respond to any judgment we render"); *Williams v. Holbrook,* 691 F.2d 3, 14 (1st Cir.1982) (courts give great weight to impropriety of allowing a fugitive to "opt in" only if the appeal is decided favorably to him); *Lopez v. Malley,* 552 F.2d 682, 683 (10th Cir. 1977) (upon decision of an appeal, a fugitive would be likely to surrender only if it were in his interest).

Although the fugitive disentitlement doctrine originally developed on appeals of criminal convictions, the government argues that it also should apply to this appeal from a restraining order to preserve the availability of assets. *See, e.g., United Electrical, Radio and Machine Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1097–98 (1st Cir.1992) (fugitive disentitlement may be applied in civil context as well as on appeal of conviction); *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1055 (9th Cir.1991) (fugitive disentitlement doctrine may be applied in contexts other than appeal of conviction). The general applicability of the doctrine to asset restraints was accepted in *United States v. Veliotis,* 586 F.Supp. 1512 (S.D.N.Y. 1984), although there the court refused to apply the doctrine because constitutional issues were presented and because the fugitive appellant would be bound by either a favorable or an unfavorable result concerning the restraint.

Here, however, we think that the doctrine should be applied. Jacob Dobrer has been indicted and a bench warrant has been issued for him. He was mailed a notice to appear for arraignment but he did not do so. When the government moved to dismiss his appeal, Jacob Dobrer's attorneys in their responding papers did not claim that he was unaware of his indictment. Furthermore, they concede he is in Russia and they present no facts from which we could conclude that he is unable to return to answer the indictment. In these circumstances we only can regard him as a fugitive.[6] As the court indicated in *United States v. Catino,* 735 F.2d 718, 722 (2d Cir.1984): "The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction 'con-

---

6. We are aware that in some cases attorneys act without the consent and, indeed, without the knowledge of their clients. *See Brewer v. Lewis,* 989 F.2d 1021, 1023 (9th Cir.1993). But Jacob Dobrer's attorneys do not suggest that they are acting without his authority. Accordingly, he may even on the most personal basis be regarded as an active litigant in this court.

structively flees' by deciding not to return." *Id.* at 722. Indeed the *Catino* court concluded that a defendant imprisoned in France could be a fugitive because he actively resisted extradition to the United States. In this case, we believe that inasmuch as Jacob Dobrer is unwilling to submit to the jurisdiction of the criminal court in which he has been indicted and to abide the consequences of the ultimate judgment of that court, we should not afford him the opportunity of challenging the validity of proceedings related to the criminal case.[7]

### b. *Standard of Review*

 As discussed earlier, we have jurisdiction because the district court's order is an immediately appealable preliminary injunction. Therefore the standard governing our review is that accorded to grants or denials of preliminary injunctions, *i.e.,* whether the district court abused its discretion, committed an obvious error in applying the law, or made a clear mistake in considering the proof. *Philadelphia Marine Trade Ass'n v. Local 1291,* 909 F.2d 754, 756 (3d Cir.1990), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 953, 112 L.Ed.2d 1041 (1991); *Loretangeli v. Critelli,* 853 F.2d 186, 193 (3d Cir.1988). We review the district court's factual determinations under a clearly erroneous standard and we give questions of law plenary review. *John F. Harkins Co. v. Waldinger Corp.,* 796 F.2d 657, 658 (3d Cir. 1986), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). Inasmuch as our result depends upon a question of law, *i.e.,* whether Section 1963(m) substitute assets are subject to pre-conviction or pre-indictment restraints, we are exercising plenary review. *See Kreimer v. Bureau of Police of Morristown,* 958 F.2d 1242, 1250 n. 9 (3d Cir.1992).

### III. RESTRAINT OF SUBSTITUTE ASSETS

 The propriety of a restraint to preserve the availability of substitute assets depends upon the relationship among three subsections of the RICO forfeiture provision,

18 U.S.C. § 1963. Section 1963(a) defines three categories of assets related to RICO offenses that must be forfeited upon conviction:

> (a) Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
>
> (1) any interest the person has acquired or maintained in violation of section 1962;
>
> (2) any—
>
>> (A) interest in;
>>
>> (B) security of;
>>
>> (C) claim against; or
>>
>> (D) property or contractual right of any kind affording a source of influence over;
>
> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and
>
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

Section 1963(m) defines the substitute assets that may be forfeited if the forfeitable assets of Section 1963(a) are unavailable:

> (m) If any of the property described in subsection (a), as a result of any act or omission of the defendant—
>
> (1) cannot be located upon the exercise of due diligence;
>
> (2) has been transferred or sold to, or deposited with, a third party;
>
> (3) has been placed beyond the jurisdiction of the court;
>
> (4) has been substantially diminished in value; or
>
> (5) has been commingled with other property which cannot be divided without difficulty;
>
> the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

---

7. We also point out that Jacob Dobrer has been indicted in the United States District Court for the District of New Jersey and is a fugitive on that indictment as well.

Section 1963(d)(1) provides for pre-conviction and pre-indictment restraints to preserve the availability of assets that may be subject to forfeiture:

(d)(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered....

Thus, the restraints provision of Section 1963(d)(1) refers specifically to "subsection (a)" assets and does not mention subsection (m) substitute assets. The appellants therefore contend that subsection (m) assets simply cannot be subjected to a pre-indictment restraint. On the other hand, the government argues that a district court can issue pre-conviction or pre-indictment restraints on either subsection (a) or subsection (m) assets, so long as the value of the property restrained does not exceed the demonstrated amount of profits derived from the RICO enterprise.

Restraints to preserve the availability of substitute assets have been reviewed recently by two other courts of appeals, with opposite results. The Court of Appeals for the Fifth Circuit determined that the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853(e)(1), whose substantive terms are in material part identical to those of RICO, 18 U.S.C. § 1963(d)(1), did not permit a restraint to preserve substitute assets. *United States v. Floyd*, 992 F.2d 498 (1993). The Court of Appeals for the Fourth Circuit reached the opposite result when it concluded that RICO Section 1963(m) substitute assets can be preserved by a restraint under Section 1963(d)(1). *In re Billman*, 915 F.2d 916 (1990).

In *Floyd* the court determined on the basis of the clear limitations of the statute's language that substitute assets were not subject to pretrial restraints:

We find that the statute controlling the restraint before us plainly states what property may be restrained before trial. Congress made specific reference to the property described in § 853(a) [equivalent to RICO Section 1963(a)], and that description does not include substitute assets. Congress treated substitute assets in a different section, § 853(p) [equivalent to RICO Section 1963(m)]. To allow the government to freeze Floyd's untainted assets would require us to interpret the phrase 'property described in subsection (a)' to mean property described in subsection (a) and (p).

*Id.* at 502. *See also United States v. Chinn*, 687 F.Supp. 125, 127 (S.D.N.Y.1988) ("[i]n the absence of any authority for pre-trial attachment of assets not specifically named in Section 1963(a), and therefore not covered by [the restraint provisions of] Section 1963(d), I decline to order such an extension by judicial fiat").

The *Floyd* court would not follow *Billman*. In *Billman*, the court reasoned that because RICO forfeitures constitute an *in personam* punishment, and because an ultimate forfeiture judgment could be satisfied from any of a defendant's assets, the pre-conviction restraint provisions must be construed broadly to accomplish the purpose of preserving, before trial, *all* assets that might ultimately be subject to forfeiture, including substitute assets:

Although reference is made in subsection (d)(1) to property described in subsection (a), we believe that when, as here, the defendant has placed the assets specified in subsection (a) beyond the jurisdiction of the court, subsection (d)(1)(A) must be read in conjunction with subsection (m) to preserve the availability of substitute assets pending trial. In this way the purpose of § 1963(d)(1)(A) can be attained.

915 F.2d at 921. The Court of Appeals for the Second Circuit used similar reasoning in *United States v. Regan,* 858 F.2d 115, 121 (1988):

Although this provision [*i.e.,* 18 U.S.C. § 1963(m)(5)] concerns the ultimate forfeiture, it surely suggests that restraining orders entered before forfeiture should be concerned with preserving assets equivalent in value to the potentially forfeitable property, and not necessarily the precise property. We believe, therefore, that where the nature of the defendants' forfeitable property makes the imposition of a restraining order burdensome on third parties, the district court should, as an alternative, restrain [substitute] assets of the defendant equal in value to that of the unrestrained forfeitable property.

*See also In re Assets of Parent Industries, Inc.,* 739 F.Supp. 248, 255–56 (E.D.Pa.1990) (assuming that Section 1963(m) substitute assets can be subject to pretrial restraints).

■ We believe that *Floyd* correctly interpreted the statutory pretrial restraint provisions as applied to substitute property. We further believe that *Billman* did not explain adequately why the pretrial restraint provisions' clear limitation to subsection (a) assets was furthered by treating subsection (m) substitute assets as though they were subsection (a) assets. In our view, *Billman's* conclusion cannot be reconciled with the normal rule of statutory interpretation that a court does not look to the purpose of a statute when the meaning is clear on its face. *See, e.g., United States v. Koyomejian,* 946 F.2d 1450, 1453 (9th Cir.1991). As we have indicated frequently, when a statute is plain on its face, we do not resort to legislative history to uncover its meaning. *See, e.g., United States v. Alcan Aluminum Corp.,* 964

F.2d 252, 260 (3d Cir.1992). The restraints of Section 1963(d)(1) specifically are limited to the "property described in subsection (a)" and we therefore agree with the holding in *Floyd* that subsection (m) substitute assets simply may not be subject to pre-conviction or pre-indictment restraints.

We, like the *Floyd* court, find the plain language of the statute so clearly dispositive that ordinarily we would not consider legislative history. However, in light of the circumstance that our result conflicts with *Billman,* we have examined the legislative history, which demonstrates, were there any doubt, that the *Floyd* court's reading of the statutory language is correct. *Billman* found, and *Regan* suggested, that the congressional purpose underlying asset forfeitures would demand that pre-conviction and pre-indictment restraints include subsection (m) substitute assets, as well as the subsection (a) assets specified in the statute. However, legislative history establishes the contrary—a clear congressional purpose to exempt subsection (m) substitute assets from any pre-conviction or pre-indictment restraints.

The substitute assets provision, substantially in the form of the present subsection (m), was added to RICO by a 1986 amendment, Pub.L. No. 99–570, tit. I, § 1153(a), 100 Stat. 3207, 3207–13. Most of the present RICO forfeiture provisions had been adopted two years earlier, in the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, §§ 302, 2301(a)–(c), 98 Stat. 1976, 2040–44, 2192. Earlier versions of the amendments, including the substitute asset provision, had been under consideration for several years and one of those versions, the Comprehensive Criminal Forfeiture Act of 1982, was the subject of extensive commentary in Senate Report 97–520, 97th Cong., 2d Sess. (1982). That Report analyzed a proposed substitute asset provision substantially like the provision ultimately enacted:

Subsection (d) [the present subsection (m)] of the bill's amended RICO forfeiture provision is new to the law, and authorizes the court to order the defendant to forfeit substitute assets when the property originally subject to forfeiture is no longer available at the time of the conviction.

This subsection authorizes forfeiture of substitute assets in five circumstances: where property found subject to forfeiture under section [1963(a)] ... (1) cannot be located; (2) has been transferred to or deposited with a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been substantially diminished in value by the defendant; or (5) has been commingled with other property which cannot be divided without difficulty. The amount of substitute assets which may be forfeited under this subsection is limited to the value of property described in [present subsection (a)][8] that is unavailable.

Sen.Rep. at 9. The Report then, in discussing the proposed provisions for pre-conviction and pre-indictment asset restraints, left no doubt that substitute assets are not to be subjected to such restraints:

> It should also be noted that the restraining order provision applies only to [subsection (a)] property. It may not be applied with respect to other assets that may ultimately be ordered forfeited under the substitute assets provision.

*Id.* at 10 n. 18.[9] This legislative history unequivocally establishes that Congress meant what it said in limiting pre-conviction and pre-indictment restraints to subsection (a) property. Contrary to the conclusions in *Billman* and *Regan*, Congress had no purpose of allowing pretrial restraints of all assets, including substitute assets, that ultimately might be forfeitable. Rather, Congress clearly intended to exclude substitute assets from property subject to preliminary restraints.

In addition to being dictated by the language of the statute and its legislative history, our result comports with the Supreme Court's cautious interpretation of the scope of forfeiture provisions. *See Austin v. United States*, —— U.S. ——, ——, 113 S.Ct. 2801, 2811, 125 L.Ed.2d 488 (1993) (Eighth Amendment's Excessive Fines Clause may limit the amount of *in rem* forfeitures sought by government under 21 U.S.C. §§ 881(a)(4) and (a)(7)); *Alexander v. United States*, —— U.S. ——, ——, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993) (Excessive Fines Clause applies to forfeiture of assets under RICO, 18 U.S.C. § 1963(a)).[10] Although *Alexander* was remanded for reconsideration of whether the forfeitures resulted in an excessive penalty under the Excessive Fines Clause, the majority found that forfeiture of the defendant's bookstore businesses did not offend the First Amendment as a prior restraint of speech, because the forfeiture order "only deprives him of specific assets that were found to be related to his previous racketeering violations." —— U.S. at ——, 113 S.Ct. at 2771. However, that rationale would not support the forfeiture of Section 1963(m) substitute assets if those assets were expressive materials. Indeed, consideration of forfeiture in the context of substitute assets, which was not required in *Alexander*, might well support the argument of the *Alexander* dissenters that, in some circumstances at least, forfeiture inappropriately is applied to expressive materials without some prior determination of obscenity.[11] Further, the Su-

---

8. For the reader's convenience, we have substituted the equivalent section numbers of the present statute for the original section numbers.

9. Although Senate Report 97–520 predated the enactment of the substitute assets provision by some four years, it remains valid legislative history for determining the provision's meaning. *See, e.g.,* Judith Manion, Joseph Meringolo & Robert Oaks, *A Research Guide to Congress* 107–08 (1991).

10. In a civil *in rem* forfeiture case involving a claimant who advanced an "innocent owner" defense the Court has indicated that in view of the substantive expansion of the statute involved and the congressional intention to protect innocent owners, it would "approach the task of construing [the statute] with caution." *United States v. A Parcel of Land etc., Known as 92 Buena Vista Ave.,* —— U.S. ——, ——, 113 S.Ct. 1126, 1134, 122 L.Ed.2d 469 (1993).

11. Consider, for example, the case of a RICO defendant who owned two separate bookstore businesses, one a RICO enterprise engaged in selling obscene literature, and a second engaged in selling legitimate books on current political topics. If the defendant were convicted of the RICO offense but had dissipated the proceeds of his sales of obscene books, the government would then have the power, under Section 1963(m), to seize the defendant's books on political topics. The potential for abuse of fundamental First Amendment rights inherent in that scenario supports the *Alexander* dissenters' unease with permitting broad forfeitures of protected expressive materials.

preme Court's application of Eighth Amendment limitations to forfeitures suggests to us that we need to keep prosecutorial zeal for such remedies within particular boundaries. This case demonstrates the point, for here a statute obviously intended by Congress not to subject substitute assets to the effect of pretrial restraints somehow was metamorphosed by the government into a medium for reaching the excluded assets.[12]

◼ The government has argued an alternative ground in support of the district court's result. The government maintains that regardless of whether pretrial restraints can apply to substitute assets, the trial court found a "nexus" between the relevant assets and the alleged RICO violations, i.e., found that such assets were subsection (a) property, and therefore the restraints were proper. However, the record is confused on this point. The district court, in an understandable attempt to reach an expeditious yet thorough resolution of the government's motion, did not issue any formal findings of fact to support its order.[13] The ruling from the bench does not include findings sufficient for us to say that the district court properly determined the restrained assets to be subsection (a) property. Indeed, while the district court did conclude that some of the relevant assets were "nexus," or subsection (a), property, it did not delineate underlying facts supporting the conclusions:

> I find that the Government has proved the necessary nexus with respect to the home of Gerald DiTursi in Hudson, Florida, as well as the assets seized of American Enterprises, Inc. and Grast, Inc.

> I also find that a sufficient nexus exists with respect to the property of NWR, Inc. Section 1963(a) subjects to forfeiture the interest—any interest a person has acquired or maintained in violation of Section 1962 or any interest in, security of, claim against or property of any kind affording a

source of influence over any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Section 1962. And also, any property constituting or derived from any proceeds [which] the person obtained directly or indirectly from racketeering activity or in violation of Section 1962. The Government has made the necessary showing with respect to the property of NWR, Inc.

(J.A. 645). Nevertheless the district court seemed uncertain about the strength of the evidence that might support a finding of a "nexus" between the property restrained and the RICO enterprise; therefore, it ultimately based its entry of the restraints on the legal conclusion that substitute assets may be so restrained:

> To the extent that the Government has not proven a nexus between the property in issue and the enterprise, I conclude that such a nexus is not required under RICO. The profits from the enterprise were in excess of $15 million, while the amount sought to be restrained for ultimate forfeiture is only $5 million.

> While this issue has not been definitively settled by the United States Supreme Court or by the Court of Appeals for the Third Circuit, I conclude that this Court may restrain substitute assets in the pre-indictment stage, so long as the property restrained does not exceed the profits from the enterprise.

(J.A. 646).

Our examination of the oral ruling of the district court leads us to conclude that it is not possible to determine on what underlying facts, and according to what standard, the district court may have determined that some of the relevant assets were subsection (a) property. Furthermore, the district court did not make any specific findings as to

---

12. We address the question before us from the approach of determining what Congress intended. While there might be good reason to allow a court to order pretrial restraints to preserve Section 1963(m) property, only Congress can do so.

13. It is clear that the district court was trying to determine this very difficult issue as expeditiously as possible, in light of the serious ramifications

for all parties. We therefore certainly cannot fault its procedures and indeed commend that court for its thorough disposition in the circumstances. However, we would note that written findings of fact and conclusions of law are often necessary for a proper review and can sometimes obviate the need for further proceedings.

who owned interests in certain of the restrained properties, *e.g.*, assets of NWR, Grast, and American Enterprises; and as we noted earlier, the district court at the time of the hearing assumed forfeitable RICO proceeds might exceed $15 million, whereas the later indictment asserted only slightly over $6 million in forfeitable assets. Therefore, in view of our conclusion that pretrial orders may not be entered to preserve the availability of substitute assets, it is necessary to vacate the district court's order in its entirety with respect to the appellants' property, except to the extent that it affects property of Jacob Dobrer, because we cannot determine from the record whether some of the assets properly may have been restrainable on alternative grounds.

Because of our conclusion concerning substitute assets, we need not reach two additional points raised by the appellants, *i.e.*, whether the trial court properly applied the statutory standards for a restraint under Section 1963(d)(1)(B), and whether the restraint of substitute assets might violate the Sixth Amendment right to counsel or Fifth Amendment due process. Due to the indictment of several of the subjects of the restraints after entry of the February 17, 1993 order, this case is now in a much different posture, both as to possible restraints against indicted defendants and possible restraints to preserve the availability of assets in the hands of unindicted third parties, than it was on that date. In the event that the government should renew its requests for similar or additional restraints, it will be within the discretion of the district court, in the first instance, to determine the proper standards and procedures to follow, including whether an additional evidentiary hearing may be necessary to establish a basis for any requested restraints.

## IV. CONCLUSION

We hold that substitute assets, as defined by Section 1963(m), cannot be restrained pre-conviction or pre-indictment under Section 1963(d)(1)(A) or Section 1963(d)(1)(B), re-

spectively. Therefore, because the order of February 17, 1993, was based upon an erroneous legal conclusion that such assets were restrainable, we will vacate the order with respect to the appellants' property except to the extent that it affects property of Jacob Dobrer.[14] We will dismiss the appeal of Jacob Dobrer. We will remand the case for further proceedings consistent with this opinion.

---

**14.** While we cannot predict the future course of this litigation, it may well be that the district court will find it necessary to conduct a hearing to determine what assets are owned by Jacob Dobrer so as not to be affected by this appeal.