**UNITED STATES of America, Plaintiff,**

v.

**Clement MESSINO, Defendant.**

**No. 93 CR 294.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 11, 1996.

**1308**

John L. Sullivan, Magidson & Sullivan, Chicago, Illinois, for Estate of Biagio Messino, Maribeth Messino and Joseph Messino.

Joseph Storto, Storto, Kalal & Finn, Bensenville, Illinois, E.E. Edwards, Edwards & Simmons, Nashville, Tennessee, for Ted Borowski.

Matthew M. Schneider, Asst. U.S. Atty., United States Attorney's Office, Chicago, Illinois, for United States.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALESIA, District Judge.

On February 12, 1996, the court held an evidentiary hearing on the third-party claim of Joseph Messino to a 1991 Harley Davidson Sturgis motorcycle ("motorcycle") and a 19.15 percent interest in a 1963 Chevrolet Corvette ("Corvette"), both of which were ordered forfeited in connection with the above-captioned criminal case.

The court, based upon the credible evidence of record, makes the following Findings of Fact and Conclusions of Law.

### I. *1991 Harley Davidson Sturgis Motorcycle*

#### A. FINDINGS OF FACT

*Facts*

1. The court entered a preliminary order of forfeiture against the motorcycle on August 21, 1995, as a substitute asset against the money judgment special verdict of forfeiture against Clement Messino.

2. Joseph Messino, the claimant to the motorcycle, is the son of Clement Messino.

3. The motorcycle was a defendant in the civil forfeiture proceeding *United States v. Michelle's Lounge*, No. 91 C 5783 (N.D.Ill.). Joseph Messino filed a claim to the motorcycle in that proceeding in October 1991.

4. The receipt for the motorcycle lists Joseph Messino's name and an address of 15201 South Lavergne, Oak Forest, Illinois.

5. Joseph Messino never lived at 15201 South Lavergne, Oak Forest, Illinois.

6. Clement Messino lived at 15201 South Lavergne in February 1991 when the motorcycle was purchased.

7. Bob Perrott ("Perrott"), the store manager of the Harley Davidson dealership

where the motorcycle was bought, testified at the criminal trial of Clement Messino that Clement Messino bought the motorcycle in February 1991 for $12,000.

8. Perrott testified that Clement Messino paid for the motorcycle on three separate occasions.

9. On February 5, 1991, Clement Messino gave Perrott a $2,000 deposit on the motorcycle.

10. On February 9, 1991, Clement Messino gave Perrott cashier's checks totalling $6,000 for the motorcycle.

11. On February 14, 1991, Clement Messino gave Perrott $4,000 as the final payment for the purchase of the motorcycle. On this date, Clement and Joseph Messino picked up the motorcycle.

12. The parties in the criminal trial stipulated that a series of seven checks from three different banks totalling $8,000 were used towards the purchase of the motorcycle:

| Check No. | Bank | Remitter | Amount |
| --- | --- | --- | --- |
| 417240876 | A.J. Smith | Robin Smith | $1,000 |
| 417240877 | A.J. Smith | Robin Smith | $1,000 |
| 417240908 | A.J. Smith | Daniel George | $1,000 |
| 417240909 | A.J. Smith | Daniel George | $1,000 |
| 434558 | Mutual Bank | Joseph Messino | $2,000 |
| 2461072882 | Interstate | Kathy Lewis | $1,000 |
| 2461072883 | Interstate | Kathy Lewis | $1,000 |

13. Robin Smith was Clement Messino's girlfriend from the early 1980s until 1987. Daniel George married Robin Smith after Clement Messino went to prison in 1987.

14. Kathy Lewis was Clement Messino's girlfriend between 1989 and 1992.

15. Joseph Messino purchased one cashier's check for the motorcycle.

16. Joseph Messino testified at the hearing before this court that during the years preceding the time Clement bought the motorcycle, Joseph Messino had worked and earned an income. He testified that he saved money from those earnings by giving his paychecks or money to his father to keep for him. Joseph Messino testified that he had saved about $8,000 by February 1991. He also testified that the remaining $4,000 spent to buy the motorcycle was money his father loaned him and which he paid back in the year that followed February 1991.

17. In a meeting with the judge in the civil forfeiture proceeding, *Michelle's Lounge,* Joseph Messino's attorney represented to the judge that the motorcycle was bought for $10,500, with half of the money coming from money Joseph Messino received from his grandmother as a graduation present, and the rest from money Joseph Messino earned himself.

18. Perrott testified at the criminal trial that Clement Messino told him to put Joseph Messino's name and the address of 15201 South Lavergne, Oak Forest, Illinois, on the receipt for the motorcycle.

19. Perrott testified at the criminal trial that Clement Messino told him if anyone asked, the motorcycle was his son's.

### Witnesses

#### Claimant's witness

20. *Joseph Messino* testified on his own behalf regarding the motorcycle at the February 12, 1996, hearing before this court.

#### Government's witness

21. *Bob Perrott,* the store manager of the Harley Davidson dealership where Clement Messino purchased the motorcycle, testified at the criminal trial of Clement and Christopher Richard Messino.

### Credibility Findings

22. *Joseph Messino* was not a wholly credible witness. The court doubts the portion of Messino's testimony about how he came up with the money to pay for the motorcycle. His hearing testimony before this court on this issue contradicts his earlier testimony in the *Michelle's Lounge* proceeding.

The court also notes that the amount of money Joseph Messino allegedly spent on the motorcycle and the amount of money he allegedly spent on upgrades to the Corvette (*see infra*) substantially exceed the amount he earned in the relevant period.

The court also finds that the method of payment for the motorcycle is atypical of the way in which one usually buys a big-ticket item, which might include a down payment and financing, but is quite typical of the way

in which one launders money—numerous small payments made in various names.

In sum, the court does not believe Joseph Messino's version of the events surrounding the purchase of the motorcycle.

23. *Bob Perrott* did not testify at the recent forfeiture hearing before this court, and the court was not the trier of fact in the criminal trial. Therefore, this court is not able to judge the credibility of this witness. However, the court notes that the witness seems to be a disinterested one, with nothing at stake to induce him to testify falsely.

### B. CONCLUSIONS OF LAW

1. In addition to the testimony and evidence presented at the February 12, 1996, hearing before the court, the court shall consider the relevant portions of the record of the criminal case that resulted in the order of forfeiture against the motorcycle as a substitute asset. 21 U.S.C. § 853(n)(5).

2. In order for claimant Joseph Messino to succeed on his claim for the motorcycle, he must establish by a preponderance of the evidence that he has a legal right, title, or interest in the motorcycle, and that his right, title, or interest renders the order of forfeiture for the motorcycle invalid in whole or in part, because the right, title, or interest was vested in Joseph Messino rather than in Clement Messino or was superior to any right, title, or interest of Clement Messino at the time of the commission of the acts that gave rise to the forfeiture of the motorcycle. *See* 21 U.S.C. § 853(n)(6)(A).

3. Claimant Joseph Messino has failed to meet the foregoing burden, and therefore has not established that he has a right to all or part of the motorcycle.

### C. DECISION

Claimant Joseph Messino's claim to the 1991 Harley Davidson Sturgis motorcycle is denied.

### II. *1963 Corvette*

### A. FINDINGS OF FACT

*Facts*

1. The jury returned a special order of forfeiture at the end of the criminal trial of Clement and Christopher Richard Messino as to a one-half interest in the Corvette.[1]

2. The court entered a preliminary order of forfeiture against the Corvette on August 21, 1995.

3. Joseph Messino, the claimant to the Corvette, is the son of Clement Messino.

4. The Corvette was a defendant in the civil forfeiture proceeding of *United States v. Michelle's Lounge,* No. 91 C 5783 (N.D.Ill.). Joseph Messino filed a claim to the Corvette in that proceeding in October 1991.

5. In April 1987, Clement Messino bought the Corvette from Rob Saboury ("Saboury") in Westminster, Maryland, for $23,500 in cash. However, he asked Saboury to make out a receipt for only $1,000, which Saboury did.

6. Clement Messino had the title to the Corvette put in the names of his sons, Joseph and Tony Messino.

7. Joseph Messino was 15 or 16 at the time Clement Messino bought the Corvette.

8. Clement Messino stored the Corvette at his business, the Auto Abbey.

9. Shortly after buying the Corvette, Clement Messino went to prison until approximately 1989.

10. Joseph Messino testified at the February 12, 1996, hearing before this court that in the fall of 1990, he purchased a $1,400 teak steering wheel, a $3,300 set of wheels, a $1,500 set of tires, and a $90 fuel cell for the Corvette, for a total of $6,290 in upgrades.

11. Joseph Messino testified that all the money he made from his employment he saved and gave to his father to keep for him.

12. Joseph Messino testified that by February 1991 he gave his father approximately $8,100 or $8,200 to hold for him.

13. Joseph Messino testified that his father used the money he gave him to buy the Sturgis motorcycle in February 1991.

---

1. The other one-half interest in the Corvette is the subject matter of an interlocutory appeal pending before the Seventh Circuit. *United States v. Michelle's Lounge, et al.,* No. 95–1411. That one-half interest is not at issue in the third-party forfeiture proceeding before this court.

14. Joseph Messino reported gross income of $2,520 in 1989 and $9,018 in 1990.

15. Joseph Messino's claim in the civil forfeiture proceeding, *Michelle's Lounge,* did not state an interest in or identify any of the improvements to the Corvette that he now claims in this proceeding.

16. In his claim in the civil forfeiture proceeding, and initially in the proceeding before this court, Joseph Messino claimed a one-half interest in the Corvette.

17. Joseph Messino's sworn petition filed in this proceeding on October 18, 1995, states that the improvements he made to the Corvette consisted of a teak steering wheel that he purchased for approximately $1,700 and a set of custom wheels that he purchased for approximately $2,500, for a total of $4,200 in improvements.

18. Joseph Messino now claims that he made $4,500 in improvements to the Corvette.

19. Joseph Messino's sworn petition filed in this proceeding on October 18, 1995, states that he contributed to the purchase price of the Corvette.

*Witnesses*

*Claimant's witness*

20. *Joseph Messino* testified on his own behalf regarding the motorcycle at the February 12, 1996, hearing before this court.

*Government's witness*

21. *Rod Saboury,* who sold the Corvette to Clement Messino, testified at the criminal trial of Clement and Christopher Richard Messino.

*Credibility Findings*

22. *Joseph Messino* was not a wholly credible witness. The court doubts the portion of Joseph Messino's testimony in the February 12, 1996, hearing before this court about how he came up with the money to buy almost $6,300 worth of components for the Corvette. Joseph Messino claims that by February 1991, he had earned over $8,000 from work and had given the money to his father to keep for him. However, he also claims that he used the money to pay his father · back for the Sturgis motorcycle.

Thus, according to Joseph Messino, he bought about $14,300 worth of goods with his own money, but only had about $8,000.

The court also notes that Joseph Messino several times has changed his claim, from an interest in the car itself to merely the improvements he allegedly made to the car. Moreover, Joseph Messino several times has changed his claim as to the cost of the improvements.

The court finds that Joseph Messino's own testimony in the hearing before this court suffers from contradictions. The court also finds that Joseph Messino's testimony in the proceeding before this court is inconsistent with his testimony before the court in *Michelle's Lounge.* The court finds further that Joseph Messino's testimony in the hearing before this court is inconsistent with his written claim for the Corvette.

23. *Rod Saboury* did not testify at the recent forfeiture hearing before this court, and the court was not the trier of fact in the criminal trial. Therefore, this court is not able to judge the credibility of this witness. However, the court notes that the trier of fact at the criminal trial, the jury, returned a special verdict of forfeiture against the Corvette based on the testimony of this witness. Thus, the inference is that the jury found the witness credible. The court also notes that the witness seems to be a disinterested one, with nothing at stake to induce him to testify falsely.

**B. CONCLUSIONS OF LAW**

1. In addition to the testimony and evidence presented at the February 12, 1996, hearing before the court, the court shall consider the relevant portions of the record of the criminal case that resulted in the order of forfeiture against the Corvette. 21 U.S.C. § 853(n)(5).

2. In order for claimant Joseph Messino to succeed on his claim for the Corvette, he must establish by a preponderance of the evidence that he has a legal right, title, or interest in the Corvette, and that his right, title, or interest renders the order of forfeiture for the Corvette invalid in whole or in part, because the right, title, or interest was vested in Joseph Messino rather than in

Clement Messino or was superior to any right, title, or interest of Clement Messino at the time of the commission of the acts that gave rise to the forfeiture of the Corvette. *See* 21 U.S.C. § 853(n)(6)(A).

3. Claimant Joseph Messino has failed to meet the foregoing burden, and therefore has not established that he has a right to a 19.15 percent interest in the Corvette.

### C. *DECISION*

Joseph Messino's claim to a 19.15 percent interest in the 1963 Chevrolet Corvette is denied.