**UNITED STATES of America, Plaintiff,**

v.

**Eugene A. SCHMITZ, and Elaine K. Schmitz, Defendants.**

No. 93–Cr–186.

United States District Court, E.D. Wisconsin.

Feb. 18, 1994.

Steven M. Biskupic and Gail J. Hoffman, Asst. U.S. Attys., Milwaukee, WI, for plaintiff.

James Shellow and Craig Albee, Shellow, Shellow and Glynn, Milwaukee, WI, for Eugene Schmitz.

Beth Kushner, Gibbs Roper Loots and Williams, Milwaukee, WI, William Theis, Chicago, IL, for Elaine Schmitz.

## ORDER

GOODSTEIN, United States Magistrate Judge.

Currently pending before the court are two motions for the return of property. In one, the defendants seek the return of approximately $86,500 in funds and securities which were seized by the United States Marshal pursuant to seizure warrants issued on October 19, 1993; in the other, they request the return of four vehicles initially seized by law enforcement officers for the City of Wauwatosa on August 1, 1993.

A federal grand jury sitting for the Eastern District of Wisconsin issued a six count indictment on October 19, 1993, charging Eugene and Elaine Schmitz in count one and Eugene Schmitz alone in count two with structuring financial transactions in violation of 31 U.S.C. §§ 5322(a) and 5324(a)(3); charging Eugene Schmitz alone in count three with conspiring to distribute marijuana, in violation of 21 U.S.C. § 846, and alone in count four with distributing marijuana, in violation of 21 U.S.C. § 841(a)(1) and alone in count five with the possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and charging Elaine Schmitz alone in count six with the possession of marijuana, in violation of 21 U.S.C. § 844. The indictment also includes a forfeiture provision identifying, for forfeiture at the conclusion of the criminal proceedings, the property which is the subject of the pending motions. The defendants were arraigned before this court on November 10, 1993 and pleaded not guilty. A jury trial will be scheduled to commence before the Honorable Thomas J. Curran following the resolution of all pretrial motions.

### Motion for the Return of Approximately $86,500 in Funds

Turning first to the motion for the return of the funds and securities, the defendants move for the return of their assets under the authority of Fed.R.Crim.P. 41(e), challenging the legality of the seizure warrants. The defendants also contend that the continued restraint of the assets is a hardship, and

impedes their ability to retain counsel of their choice. Thus, the initial question raised by the defendants' motion is whether the seizures were authorized by statute, and, if the initial seizures were lawful, has the government demonstrated an interest in the continued restraint of the assets.

■ The government contends that the court can only examine the lawfulness of the seizure and not the propriety of forfeiture, which is necessarily intertwined with the government's interest in the continued restraint of the assets. The government's position fails to take note of the 1989 amendments to Rule 41(e) which added the following italicized language and now provide that "[a] person aggrieved by an unlawful search and seizure *or by the deprivation of property* may move the district court ... for the return of the property on the ground that such person is entitled to lawful possession of the property." Therefore, a "person whose property has been lawfully seized may seek return of property when aggrieved by the continued possession of it." *See* Notes of Advisory Committee accompanying the 1989 Amendment to Fed.R.Crim.P. 41. *See also, In re Seizure of Four (4) DC–3 Aircraft*, 134 F.R.D. 251 (E.D.Wis.1991); *In re 4330 North 35th St.*, 142 F.R.D. 161 (E.D.Wis.1992).

The court is thus satisfied that, regardless of whether the initial seizure was lawful or unlawful, the court is empowered under Fed.R.Crim.P. 41(e) to reach both issues; the lawfulness of the initial seizure and the continued retention of the property. The court notes that a motion for the return of property which is filed after an indictment is filed shall also be treated also as a motion to suppress under Fed.R.Crim.P. 12. *See* Fed.R.Crim.P. 41(e). However, it is clear from the parties' submissions, including the defendants' separate suppression motion, that the present motion is to be treated solely as a motion for the return of the assets under Rule 41(e).

### Lawfulness of the Initial Seizure

The government is seeking forfeiture of the assets named in the indictment under the authority of 21 U.S.C. § 853. The government may seek the forfeiture of drug trafficking proceeds under 21 U.S.C. § 853(a), or

of substitute property under the authority of § 853(p) if property which would be subject to forfeiture under § 853(a) is not available for any of the reasons enumerated in § 853(p). The defendants contend that the $86,500 in assets which the defendants want returned are solely substitute assets, subject to forfeiture only under § 853(p). Although the government argues that it has authority under the statute to have substitute assets restrained and forfeited, it does not specifically state whether, or to what extent, it is proceeding in forfeiture entirely under § 853(p). In other words, are all of the assets in question substitute assets? Since the parties focus on the restraint of substitute assets, the court will similarly focus solely upon the restraint of substitute assets forfeitable under § 853(p).

■ On October 19, 1993, acting upon an application and affidavit by IRS Special Agent Richard Arkenberg, Magistrate Judge Robert Bittner issued a warrant authorizing the seizure of approximately $86,500 in funds and securities held in a variety of bank and investment accounts owned by the defendants. That same day, October 19, 1993, a grand jury for the Eastern District of Wisconsin returned an indictment which included a forfeiture provision specifically identifying the seized assets for forfeiture. The criminal forfeiture statute, 21 U.S.C. § 853, contains two sections which deal with the preconviction restraint or seizure of assets. Section 853(e)(1) provides in pertinent part, that:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—
> . . .

Section 853(f) provides that the government may request a seizure warrant for property subject to forfeiture upon conviction if the court determines "that an order under subsection (e) ... may not be sufficient to assure the availability of the property for forfeiture ..." It should be noted that subsection (f) does not specifically refer to either

subsection (a) or (p) property, but the fact that it is to be used only when the protective order provisions of subsection (e) will not be adequate is an indication that subsection (f) refers to the same property covered by subsection (e).

As discussed above, the defendants challenge the government's reliance upon 21 U.S.C. § 853(e) and (f) as authority for the restraint of assets not described in subsection (a), but forfeitable under subsection (p). The Seventh Circuit has not addressed this issue, although several other circuits have and reached differing conclusions.

The Fifth Circuit in *United States v. Floyd*, 992 F.2d 498 (5th Cir.1993), noted that the pretrial restraint provision, by its plain language, applied to property "described" in § 853(a), but that "description" does not include substitute assets which are described in subsection (p). *Floyd*, 992 F.2d at 502. Thus, the court declined "to interpret the phrase 'property described in subsection (a)' to mean property described in subsection (a) and (p)," and found that the pretrial restraint of substitute assets was not authorized. *Floyd*, 992 F.2d at 502.

The Third Circuit, in *Assets of Martin*, 1 F.3d 1351 (3rd Cir.1993), discusses a RICO forfeiture statute, 18 U.S.C. § 1963, "whose substantive terms are in material part identical," to the controlled substances forfeiture law, 21 U.S.C. § 853. *Martin*, 1 F.3d at 1358. After reviewing a number of conflicting decisions from different circuits, the court in *Martin* voices its agreement with the court in *Floyd*, and holds that the pretrial restraint of substitute assets was not authorized.

The Third Circuit, in *Martin*, rejects the line of cases approving the restraint of substitute assets, finding no adequate explanation "why [the] pretrial restraint provisions' clear limitation to subsection (a) assets [is] furthered by treating ... substitute assets as though they were subsection (a) assets." The court further concluded that the "normal rule of statutory interpretation that a court does not look to the purpose of a statute when the meaning is clear on its face," precluded the restraint of assets other than

subsection (a) assets. *Martin*, 1 F.3d at 1359.

This court is not persuaded by the reasoning in *Floyd* and *Martin*. As an initial matter, the parties in *Floyd* "agree[d] that § 853(a) does not include substitute assets," thus limiting the court's discussion of that question. 992 F.2d at 501. The court in *Martin*, drawing upon the decision in *Floyd*, reasoned that the **description of property in § 853(a)** does not include substitute assets. *Martin*, 1 F.3d at 1359. Congress did not enact the substitute asset provision, § 853(p) until § 853(a) had been in operation for several years. *Martin*, 1 F.3d at 1359; 98 Stat. 2044; 98 Stat. 2192; 2193; 100 Stat. 3207–13, 3207–54. In light of this chronology, it is not altogether surprising that the earlier enacted subsection (a) did not include a description of substitute property. In this light, the court wonders whether the better question might be whether subsection (p) was meant, in the appropriate case, to supplant subsection (a) in all regards.

The court in *Martin* believed that it was a transgression of statutory interpretation to look at the purpose of a statute when the meaning of subsection (a) is clear on its face. Interestingly, to this court, it is equally clear from the language of subsection (p) that the later enacted subsection (p) was meant to supplant subsection (a) under the appropriate conditions. In other words, subsection (p) is defined as equal to subsection (a) and should be used in lieu thereof whenever substitute property is involved, whether that is pre- or post-conviction.

Despite its stated reluctance to refer to statutory purpose, the *Martin* court quotes legislative history which predates the ultimate enactment of the substitute asset provision by four years. A footnote to the Senate Report states that:

> the restraining order provision applies only to (a)(2) property. It may not be applied with respect to other assets that may ultimately be ordered forfeited under the substitute assets provision.

Senate Report 97–520, 97th Cong., 2d Sess. (1982) at 10, n. 18; *Martin*, 1 F.3d at 1360.

A more extensive review of the surrounding text demonstrates that Congress was particularly sensitive to the constitutional reach of prior restraint powers. Senate Report at 9–10. Moreover, although not discussed in *Martin*, the footnote itself states that restraint applies only to (a)(2) property, i.e., 18 U.S.C. § 1963(a)(2), but the restraint provision as enacted allows the restraint of any property under subsection (a). See, 18 U.S.C. § 1963(a) and (d)(1); Senate Report at 6, 9–10.

Unless legislative history is uttered as part of the process of enacting the law, there is no showing that Congress acted on these assumptions as a whole and the historical value is accordingly limited. *See Quern v. Mandley*, 436 U.S. 725, 736 n. 10, 98 S.Ct. 2068, 2075 n. 10, 56 L.Ed.2d 658 (1978); *Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1438 (7th Cir.1988). In the time since this report was written and before the substitute asset provision was enacted, the "drug war" escalated and law enforcement, Congress and the courts all no doubt viewed use of the forfeiture statutes in a different light. It is therefore difficult to say that Congress' reasons, concerns and intentions at the time the substitute assets provision was enacted were the same as in 1982, when Congress declined to enact the provision.

■■■ As a matter of statutory interpretation, the Seventh Circuit has instructed that statutory analysis begins by looking at the wording of a statute itself to discern Congress' purpose. *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993). A court looks past "the express language of a statute only where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *Id., citing United States v. One Parcel of Real Estate*, 903 F.2d 490, 492 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). After examining the language and design of the statute as a whole, and only if further guidance is needed, should the court look next to the legislative history and subsequently to other tools of interpretation. *Hayward*, 6 F.3d at 1247–48. Moreover, to resolve conflicts, principles of statutory construction direct looking first at the later enactment. *Squillacote v. United States*, 562 F.Supp. 338, 344 (E.D.Wis.1983).

The defendants propose reading the restraint and seizure provisions, in isolation and in a very technical fashion. However, "[a]long with looking at the language of the statute section in question, part of a court's analysis includes examining the language and design of the statute as a whole." *Hayward*, 6 F.3d at 1245; *contrast Martin*, 1 F.3d at 1359 ("a court does not look to the purpose of a statute when the meaning is clear on its face."). In this court's opinion, the language and design of the statute supports the use of prior restraint or seizure to assure the availability of all assets subject to forfeiture, including substitute assets. This is the conclusion reached by the Second and Fourth Circuits. *In re Billman*, 915 F.2d 916 (4th Cir.1990); *United States v. Regan*, 858 F.2d 115, 121 (2nd Cir.1988). To conclude otherwise would eviscerate the intent of the criminal forfeiture statute.

The statute, 21 U.S.C. § 853, provides for the forfeiture of property derived from or used to facilitate drug trafficking crimes or a continuing criminal enterprise (CCE). 21 U.S.C. § 853(a). A major purpose of the CCE and the similar racketeer influenced and corrupt organizations (RICO) forfeiture provisions has been the desire to lessen the economic power of organized crime and drug enterprises. *Caplin & Drysdale v. United States*, 491 U.S. 617, 630, 109 S.Ct. 2646, 2654, 105 L.Ed.2d 528 (1989). This stands in contrast to other Congressional enactments which are designed more narrowly to strip a defendant of the specific instrumentalities of a crime. *See, e.g.* 18 U.S.C. § 1955; 21 U.S.C. § 881; *United States v. On Leong Chinese Merchants Assn. Bldg.*, 918 F.2d 1289, 1298 (7th Cir.1990) (Cudahy, J. concurring); *United States v. 1990 Toyota 4Runner*, 9 F.3d 651 (7th Cir., 1993).

The CCE forfeiture provision is structured broadly to undermine the economic power of a criminal organization, recognizing that the proceeds of drug trafficking and continuing criminal enterprises are often quickly secreted through a variety of means, often facially legitimate. *See*, 21 U.S.C. § 853(c) and (p);

*United States v. Moya–Gomez,* 860 F.2d 706, 723, n. 18 (7th Cir.1988) ("The purpose of [§ 853(c)] is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not 'arms' length' transactions." *quoting* S.Rep. No. 225, 98th Cong., 2d Sess. 191, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3383–84).

"[T]he government has a pecuniary interest in forfeiture that goes beyond merely separating a criminal from his ill-gotten gains; that legitimate interest extends to recovering *all* forfeitable assets . . ." *Caplin & Drysdale v. United States,* 491 U.S. at 629, 109 S.Ct. at 2654 (§ 853 forfeiture) (emphasis added). "The Government's legitimate interests at the inception of forfeiture proceedings are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." *United States v. James Daniel Good Real Property,* — U.S. —, —, 114 S.Ct. 492, 503, 126 L.Ed.2d 490 (1993) (forfeiture under 21 U.S.C. § 881).

Section 853 conveys upon the government a broad interest in acquiring the economic power of criminal enterprises, to the extent that power can be attributed to unlawful activities. By statute, the government's interest extends to substitute assets. Congress clearly intended to grant the power to restrain the dissipation of forfeitable assets through subsections (e) and (f); limiting this power to the assets described in subsection (a) would thwart the government's legitimate interest in recovering all forfeitable assets. On this basis, the court is satisfied that the restraint and seizure powers found in 21 U.S.C. § 853(e) and (f) extend to assets forfeitable under § 853(p).

### Due Process and the Continued Restraint of the Assets

■ Notwithstanding this court's conclusion regarding the lawfulness of restraining or seizing substitute assets, the defendants contend that the continued restraint of the assets is a hardship and, in particular, is impeding their ability to retain counsel of their choice. Balanced against whatever interest the defendants have in the return of the assets is the government's interest in the continued restraint of the assets. Notably, the procedures of § 853(f), as with all seizure warrants, provide for an ex parte proceeding and unlike the protective order provisions of subsection (e), subsection (f) contains no mechanism in which the aggrieved party is given an opportunity to be heard. Thus, at this juncture, the court has only heard the government's view of the competing interests, which raises certain due process concerns. *See United States v. James Daniel Good Real Property,* — U.S. at —, 114 S.Ct. at 502 ("The purpose of an adversary hearing is to ensure the requisite neutrality that must inform all governmental decision-making. That protection is of particular importance here, where the Government has a direct pecuniary interest in the outcome.").

■ When the government seizes property to assert ownership and control over the property, the government's action must comply with due process. *Good Real Property,* — U.S. at —, 114 S.Ct. at 497–500. The courts "tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in 'extraordinary situations where some valid government interest is at stake that justifies *postponing* the hearing until after the event'" *Good Real Property,* — U.S. at —, 114 S.Ct. at 501; *quoting, Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Notably, the governmental interest considered to be at stake is not the general interest in forfeiting property, but the specific interest in seizing the property before the forfeiture hearing. *Good Real Property,* — U.S. at —, 114 S.Ct. at 502.

In the present case, the government's interest in immediate seizure has been satisfied. If the ultimate judicial decision is that the government is not entitled to forfeiture of the entire $86,500 in funds, this determination, "coming months after the seizure 'would not cure the temporary deprivation that an earlier hearing might have prevented.'" *Good Real Property,* — U.S. at —, 114 S.Ct. at 502; *quoting Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991).

There are several mechanisms available to assure that a party aggrieved by the ex parte deprivation of property can secure a timely adversarial hearing. The court could engraft the notice and opportunity for a hearing provision found in 21 U.S.C. § 853(e) into § 853(f). Since subsection (f) supplements subsection (e) by adding an additional power, it seems reasonable to allow an aggrieved party due process protections similar to those found in subsection (e).

Rule 41, Fed.R.Crim.P. is another vehicle for relief. *See In re Seizure of Four (4) DC-3 Aircraft*, 134 F.R.D. at 254. Under Rule 41, when a party seeks the return of property, the court is empowered to receive evidence and consider reasonable accommodations which might protect both the law enforcement interests of the United States and the property rights of the defendants.

The trial itself, with either its combined or bifurcated forfeiture procedure, provides the defendants with an opportunity to be heard. Finally, the government could institute civil forfeiture proceedings, an avenue it has opted not to pursue as regards the funds and securities.

In this case, the government submits that the preservation of these assets "does not create a financial hardship for defendants." Government's response to pretrial motions at 15. On the other hand, the defendants in their motion allege that the restraint is causing severe hardship and, in their reply brief indicate that Eugene Schmitz was terminated from his employment in October, 1993.

The defendants, however, have primarily maintained that they are entitled to a return of their property. They have adopted an "all or nothing" approach on the ground that the seizure was unlawful. While the court disagrees with the defendants' legal position, it does have unresolved due process concerns. Nevertheless, since the parties have not adequately addressed the effect of the continuing restraint, the court is uncertain whether or not some reasonable accommodation between the respective interests of the parties can be effected.

The court will not take it upon itself to determine which of the various mechanisms for pretrial relief should be utilized, if any. The fact of the matter is that the defendants have not requested a hearing. Based upon the present state of the record, the defendants' motion for the return of the approximately $86,500 in funds and securities is denied.

### Motion for the Return of Vehicles

The defendants move for the return of four vehicles seized by the City of Wauwatosa on August 1, 1993. The chronology of events surrounding the current status of the vehicles is uncontested and appears as follows:

1. The vehicles were seized on August 1, 1993, by law enforcement officers for the City of Wauwatosa during the execution of a search warrant at the Schmitz' residence. The propriety of the search and seizure which took place on July 31, 1993 and August 1, 1993, is the subject of another pending motion which is not yet fully briefed. For purposes of this motion, however, the court will accept that the initial seizure of the vehicles was proper.

2. On August 30, 1993, the United States adopted the seizure of the vehicles.

3. On October 18, 1993, the United States Department of Justice, Drug Enforcement Administration (DEA) sent notices to the defendants that the vehicles had been seized for forfeiture pursuant to 21 U.S.C. § 881. The notices advised the Schmitz of the manner in which they could contest the administrative forfeiture.

4. On October 19, 1993, a federal grand jury for the Eastern District of Wisconsin returned an indictment against the Schmitz, identifying the four vehicles in a forfeiture provision.

5. On November 9, 1993, pursuant to the notice provisions and statutory procedures, the defendants sent a claim and cost bond for each of the vehicles to the DEA in an amount totalling $6,078. These documents were sent by overnight delivery and should have been received on November 10, 1993.

6. The government, to date, has not commenced a civil forfeiture action against the vehicles; January 9, 1994 was the sixtieth day to have passed from the filing date

of the claims and cost bonds on November 10, 1993.

■ The Schmitz contend that they are entitled to the return of their property under 21 U.S.C. § 888(c), which provides that:

Not later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 ... the Attorney General shall file a complaint for forfeiture in the appropriate district court, except that the court may extend the period for filing for good cause shown or on agreement of the parties. If the Attorney General does not file a complaint as specified in the preceding sentence, the court shall order the return of the conveyance to the owner and the forfeiture may not take place.

The government responds that since criminal forfeiture proceedings have been instituted through the inclusion of the property in the indictment, it would be duplicative to commence a parallel civil forfeiture action. The government submits that the pending criminal forfeiture proceeding will provide the defendants with due process.

The government may avail itself of two different forfeiture mechanisms; criminal forfeiture under 21 U.S.C. § 853 or civil forfeiture under 21 U.S.C. § 881. In enacting § 853, Congress stated that:

A more efficient method of obtaining the forfeiture of assets of drug defendants [than under § 881] would be to permit prosecutors the option of pursuing a criminal forfeiture in which the forfeiture action can be consolidated with the prosecution of the offense giving rise to forfeiture. In cases where this alternative could be pursued, valuable judicial and law enforcement resources could be saved. Where the issues relating to civil forfeiture are the same as or closely related to those that will arise in the prosecution of a drug offense, it is a waste of valuable judicial and prosecutive resources to require separate civil forfeiture proceedings.... Thus, a more efficient mechanism for achieving the forfeiture of a defendant's proceeds from his drug trafficking or of other property he has used in the offense is to permit the *criminal forfeiture of such property and thereby consolidate the for-*feiture action with the criminal prosecution. [21 U.S.C. § 853] creates such a mechanism.

98 S.Rep. No. 225, 98th Cong., 2d Sess. 196–97, reprinted in 1984 U.S.C.C.A.N. 3182, 3379–80.

This language makes clear that criminal forfeiture under § 853 is an alternative track which the government may, in the proper case, pursue. Having exercised that option in this case, the next question is to what extent, if at all, do the provisions of 21 U.S.C. § 888 apply to forfeiture under § 853? In other words, is the government still bound by the provisions of § 888(c)?

Initially, the court notes that § 888, formerly § 881–1, appears to be a companion to 21 U.S.C. § 881, providing for an expedited procedure in the case of a seized conveyance, such as that term may be used in § 881(a)(4). The vehicles in question were obtained by the United States pursuant to § 881. Section 853(j) adopts the civil controlled substances forfeiture provisions found in 21 U.S.C. § 881(d), which in turn adopt the forfeiture provisions for customs violations, *except to the extent that they are inconsistent with the provisions of § 853.* 21 U.S.C. § 853(j); *United States v. De Ortiz,* 910 F.2d 376, 382 (7th Cir.1990).

The defendants contend that the government has given up all right to seek forfeiture of the vehicles by not filing a timely "complaint," as that term is used in § 888. The court finds this argument unpersuasive. Reading the statutes in a technical manner, as the defendants seem to prefer, a "complaint for forfeiture," as the term is used in § 888(c), is the initiation of a civil lawsuit, whereas an indictment or information, which are the terms found in § 853, refer to the initiation of criminal proceeding. Thus, the failure to file a timely complaint for forfeiture under § 888(c) may preclude all civil forfeiture of these vehicles, or only the instant proceedings which were not commenced in a timely manner. This depends on how the phrase "the forfeiture may not take place" is interpreted. Regardless, failure to comply with § 888 does not preclude criminal forfeiture. This is because the use

of the term "complaint for forfeiture" is inconsistent with criminal forfeiture procedures found in § 853 which are initiated by the filing of an "indictment" or "information." Therefore, the procedures found in 21 U.S.C. § 888(c) simply do not apply in this regard.

On the other hand, if a broad non-technical reading of the term "complaint for forfeiture" is used, it could be argued that the government did comply with the requirements of § 888(c) by filing an indictment within 60 days of filing of a claim and cost bond. This would be using the dictionary definition of "complaint" which is simply a "formal allegation against a party." Webster's New Collegiate Dictionary at 228 (1979). Parenthetically, this court finds such an argument equally unpersuasive. It is not necessary, however, to resolve the question of whether the government is foreclosed from pursuing civil forfeiture at some later date since the court is satisfied that criminal forfeiture remains a viable proceeding.

 The defendants do, however raise a point worthy of further discussion, that the government is now retaining the vehicles under the authority of 21 U.S.C. § 853 without prior judicial approval or any apparent statutory authority. *See* 21 U.S.C. § 853(e); *United States v. Millan–Colon,* 836 F.Supp. 994 (S.D.N.Y.1993) (following seizure, government obtained a post-indictment, pre-trial restraining order). To date, that there has been no judicial ratification of the continued restraint of the vehicles, thus depriving the defendants of an opportunity to be heard. When the government opted to abandon an administrative forum under §§ 881 and 888, it foreclosed the defendants of the due process provided for under those procedures. Therefore, if the government chooses to utilize criminal forfeiture, the procedures established under § 853 to provide due process must be followed. A forfeiture under § 853 only occurs upon a conviction. As discussed with the defendant's other motion, the government is entitled to either restrain or seize assets subject to forfeiture prior to conviction under clearly defined circumstances. See § 853(e), (f). This has not occurred. The government's present retention of the vehicles is without authority, and they should be

returned to the defendants. Finally, since the government has agreed to return the cost bonds, this should be done promptly.

IT IS THEREFORE ORDERED that:

1. The defendants' motion for the return of approximately $86,500 in seized assets is **denied.**

2. The defendants' motion for the return of the cost bonds is **granted.** The government shall return this property forthwith.

3. The defendants' motion for the return of the seized vehicles is **granted.** The government shall return this property within ten days of the date of this order.