**UNITED STATES of America**

v.

**Paul SCARDINO, Salvatore Scardino, Diane Scardino, Joseph Roberts, Jr., Myron Petty, Rosa Mercado, Van Sanders, Bertha Craig, La Chandra Parker, Theresa Dobyne, Brad Jones, Carolyn Ballard, Gwendolyn Kirk, Guadalupe Ibarra, and Jessica Bush.**

No. 96 CR 615.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 2, 1997.

Joseph J. Duffy, Kevin D. Evans, Andrew C. Porter, Schiff, Hardin & Waite, Chicago, IL, for Paul Scardino.

Thomas Michael Breen, Martin, Breen & Merrick, Chicago, IL, for Salvatore Scardino.

Jeffrey E. Stone, Steven Samuel Scholes, Corey B. Rubenstein, McDermott, Will & Emery, Chicago, IL, for Diane Scardino.

John Leon Sullivan, Sherman Charles Magidson, Magidson & Sullivan, Chicago, IL, for Joseph Roberts, Jr.

Sara L. Ellis, Federal Defender Program, Chicago, IL, for Myron Petty.

Carl Peter Clavelli, Chicago, IL, for Rosa Mercado.

Paul Augustus Wagner, Chicago, IL, for Van Sanders.

Donald V. Young, Donald V. Young & Associates, Chicago, IL, for Bertha Craig.

John Thomas Moran, John T. Moran & Associates, Chicago, IL, for La Chandra Parker.

William H. Theis, Shellow, Shellow & Glynn, S.C., Milwaukee, WI, for Theresa Dobyne.

David William Gleicher, Chicago, IL, for Brad Jones.

Andre M. Grant, Law Office of Andre M. Grant, Chicago, IL, for Carolyn Ballard.

Nan Rogers Nolan, Chicago, IL, for Gwendolyn Kirk.

Francis C. Lipuma, Chicago, IL, for Guadalupe Ibarra.

Susan E. Cox, U.S. Attorney's Office, Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Now before the Court is Defendant Diane Scardino's motion for an order voiding the *lis pendens* notices that the Government has filed against certain real estate parcels ostensibly owned by her. For the reasons set forth below, the Court grants in part and denies in part Defendant's motion.

### BACKGROUND

On October 3, 1996, a special grand jury returned an indictment against Salvatore Scardino, Paul Scardino, Diane Scardino and others, asserting various counts of wire fraud and unlawful use of funds. Further, the indictment charges Paul Scardino and Salvatore Scardino with money laundering and seeks forfeiture of certain assets as a result of those Defendants' alleged money laundering activities; the indictment contains no forfeiture allegations against Diane Scardino.

The forfeitable assets identified in the indictment are divided into two categories: (1) assets involved in or traceable to the money laundering activities of Salvatore Scardino and Paul Scardino, and (2) "substitute properties."

Of the 31 "substitute properties" identified in the indictment, ten allegedly belong exclusively to Diane Scardino. These ten properties are as follows:

1. *10138 Hartford Ct., Schiller Park, IL* (Par. 26)

   Purchase Date: December 12, 1991

   Purchase Price: $420,000

   Mortgage: $294,000

   Held in Trust: Diane Scardino beneficiary; Paul Scardino after her death; Diane Scardino and Paul Scardino both retain power of direction on trust

2. *612 Piper Lane, Prospect Heights, IL* (Par. 31)

   Purchase Date: November 24, 1993

   Purchase Price: $210,000

   Mortgage: $150,000

Held in Trust: Diane Scardino beneficiary; Paul Scardino guarantor of mortgage

3. *10202 N. 44th Street, Phoenix, AZ*

(Par. 8)

Purchase Date: October 6, 1986

Purchase Price: $100,000

Originally acquired by Paul and Diane Scardino; quit-claimed to Diane Scardino on September 25, 1992

4. *4101 Mission Lane, Phoenix, AZ*

(Par. 7)

Purchase Date: January 7, 1988

Purchase Price: $225,000

Originally acquired by Paul and Diane Scardino; quit-claimed to Diane Scardino on September 25, 1992

5. *5210 N. Reserve Avenue, Chicago, IL*

(Par. 20)

Purchase Date: November 20, 1970

Purchase Price: Unknown

Originally acquired by Paul Scardino in land trust; all beneficial interest quit-claimed to Diane Scardino on June 23, 1992

6. *5240 N. Reserve Avenue, Chicago, IL*

(Par. 18)

Purchase Date: June 23, 1991

Purchase Price: $413,000

Mortgage: $250,000

Originally acquired by Paul and Diane Scardino in land trust; all beneficial interest quit-claimed to Diane Scardino on June 23, 1992

7. *8507 W. Catalpa Avenue, Chicago, IL*

(Par. 19)

Purchase Date: January 31, 1992

Purchase Price: $725,000

Mortgage: $400,000

Originally acquired by Paul and Diane Scardino in land trust; all beneficial interest quit-claimed to Diane Scardino on unknown date

8. *1613 Greendale, Park Ridge, IL*

(Par. 17)

Purchase Date: Unknown

Purchase Price: Unknown

Mortgage: Unknown

Originally acquired by Paul and Diane Scardino; quit-claimed to Diane Scardino on September 25, 1992

9. *39427–28 N. Circle Avenue, Antioch, IL*

(Par. 21)

Purchase Date: October 24, 1984

Purchase Price: $232,500

Originally acquired by Paul and Diane Scardino; quit-claimed to Diane Scardino on June 23, 1992

10. *3530–50 N. Western Avenue, Chicago, IL*

(Par. 27)

Purchase Date: January 31, 1996

Purchase Price: $1,000,000

Mortgage: $750,000

Held in Trust: Diane Scardino beneficiary; Paul Scardino guarantor of mortgage

The Government apparently has filed *lis pendens* notices with respect to each of these ten properties—notices which warn all persons that title to each of the ten properties may be affected/impaired by the outcome of the criminal prosecution. Diane Scardino maintains that these notices of *lis pendens* are inappropriate and should be voided because the affected properties are not owned by either Paul Scardino or Salvatore Scardino, the only two defendants charged in the money laundering counts upon which the forfeiture allegations are premised. Alternatively, Diane Scardino argues that, even if the ten properties are potentially forfeitable, the Court should void the *lis pendens* notices on four of the properties—10138 Hartford Court, 612 Piper Lane, 5210 N. Reserve Avenue, and 5240 N. Reserve Avenue—in order to permit Diane Scardino to fund her defense.

The Government, on the other hand, argues that the *lis pendens* notices are entirely appropriate and, indeed, necessary in light of the facts that (1) a substantial number of Paul Scardino's alleged money laundering activities occurred while he possessed a significant ownership interest in each of the ten properties at issue, rendering those proper-

ties forfeitable, substitute assets; and (2) Paul Scardino divested himself of his ownership interests in the ten properties, and Diane Scardino became "sole" owner of those properties, only after the Government served grand jury subpoenas on the schools involved in the indicted offenses and identified Paul Scardino and Salvatore Scardino as targets of the Government's investigation. Moreover, the Government maintains that removing the *lis pendens* notices from the four properties identified by Diane Scardino is both unwarranted, as those notices are necessary to ensure that sufficient assets will remain to satisfy the potential forfeiture, and unnecessary, as Diane Scardino, Paul Scardino, and/or Salvatore Scardino need only escrow the potential judgment amount in order to remove the *lis pendens* notices on all of the identified "substitute properties."

## DISCUSSION

■ The crux of the parties' disagreement as to the propriety of the *lis pendens* notices is whether the ten subject properties likely are forfeitable as "substitute assets" of Paul Scardino under the continuing criminal enterprise forfeiture statute (the "CCE forfeiture statute"), 21 U.S.C. § 853(p).[1] Judge Williams recently explained the law pertaining to the forfeiture of substitute assets under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1963, whose substantive terms are, in material part, identical to the CCE forfeiture statute's:

> Under 18 U.S.C. § 1963(m), if property ordered forfeited upon a RICO conviction cannot be located or is otherwise unavailable, the government may seek forfeiture of any other property of the defendant as substitute assets up to the value of the unavailable forfeited property. If the government seeks substitute assets that have been transferred from the defendant to a third party, the government is entitled to those assets unless, under 18 U.S.C. § 1963(c), the third party can establish status as "a bona fide purchaser for value who at the time of purchase of the property was reasonably without cause to believe that the property was subject to forfeiture under this section." Courts generally do not recognize claims made by third parties who possess title to property but, the evidence shows, do so only as nominal or straw owners on behalf of a defendant attempting to avoid a fine or forfeiture.

*United States v. Infelise*, 938 F.Supp. 1352, 1369 (N.D.Ill.1996) (case citations omitted).

■ Diane Scardino argues that the ten subject properties cannot be deemed property of Paul Scardino for purposes of the CCE forfeiture statute because (1) those properties now are owned exclusively by Diane Scardino, and (2) the "relation-back" doctrine of 21 U.S.C. § 853(c) applies only to property described in 21 U.S.C. § 853(a) ("subsection (a) property")—that is, property derived from or otherwise traceable to the criminal offense—, not to substitute assets as defined in 21 U.S.C. § 853(p) ("subsection (p) property"). These arguments fail as a matter of law. Initially, this Court agrees with the court in *United States v. Schmitz*, 153 F.R.D. 136 (E.D.Wis.1994), that both the "relation-back" doctrine—the principle that the Government's interest in a defendant's property vests upon commission of the act giving rise to the forfeiture—and the restraint powers delineated in 21 U.S.C. § 853(e) extend to subsection (p) property.[2]

In *Schmitz*, the court assessed the reach of 21 U.S.C. §§ 853(e) and (f) in light of the chronology of the CCE forfeiture statute's development and the design of the CCE forfeiture statute as a whole. The *Schmitz* court began its analysis by recognizing that:

> [T]he Seventh Circuit has instructed that statutory analysis begins by looking at the

---

1. It should be noted that Diane Scardino properly does not contest the Government's authority to restrain or otherwise encumber Paul Scardino's forfeitable property prior to a conviction; she merely contests the propriety of classifying the ten properties now owned by her as substitute assets of her husband. *See United States v. Schmitz*, 153 F.R.D. 136, 138–41 (E.D.Wis.1994).

2. It should be noted that "the issue of pre-trial restraint of substitute assets has yet to be addressed by the Seventh Circuit and has split other circuits." *Infelise*, 938 F.Supp. at 1365.

wording of a statute itself to discern Congress' purpose. *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993). A court looks past "the express language of a statute only where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *Id.*, citing *United States v. One Parcel of Real Estate*, 903 F.2d 490, 492 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). After examining the language and design of the statute as a whole, and only if further guidance is needed should the court look next to the legislative history and subsequently to other tools of interpretation. *Hayward*, 6 F.3d at 1247–48. Moreover, to resolve conflicts, principles of statutory construction direct looking first at the later enactment. *Squillacote v. United States*, 562 F.Supp. 338, 344 (E.D.Wis.1983).

*Schmitz*, 153 F.R.D. at 140. The court noted:

> Congress did not enact the substitute asset provision, § 853(p), until § 853(a) had been in operation for several years. In light of this chronology, it is not altogether surprising that the earlier enacted subsection (a) did not include a description of substitute property. In this light, the court wonders whether the better question might be whether subsection (p) was meant, in the appropriate case, to supplant subsection (a) in all regards.

*Schmitz*, 153 F.R.D. at 139 (citations omitted).

The *Schmitz* court ultimately concluded:

> [T]he language and design of the statute supports the use of prior restraint or seizure to assure the availability of all assets subject to forfeiture, including substitute assets. This is the conclusion reached by the Second and Fourth Circuits. To conclude otherwise would eviscerate the intent of the criminal forfeiture statute.

\* \* \* \* \* \*

The CCE forfeiture provision is structured broadly to undermine the economic power of a criminal organization, recognizing that the proceeds of drug trafficking and continuing criminal enterprises are often quickly secreted through a variety of means, often facially legitimate.

\* \* \* \* \* \*

Section 853 conveys upon the government a broad interest in acquiring the economic power of criminal enterprises, to the extent that power can be attributed to unlawful activities. By statute, the government's interest extends to substitute assets. Congress clearly intended to grant the power to restrain the dissipation of forfeitable assets through subsections (e) and (f); limiting this power to the assets described in subsection (a) would thwart the government's legitimate interest in recovering all forfeitable assets. On this basis, the court is satisfied that the restraint and seizure powers found in 21 U.S.C. § 853(e) and (f) extend to assets forfeitable under § 853(p).

*Schmitz*, 153 F.R.D. at 140, 141 (citations omitted); *see also In re Billman*, 915 F.2d 916 (4th Cir.1990); *United States v. Regan*, 858 F.2d 115 (2d Cir.1988).[3]

While not bound by the *Schmitz* decision, this Court is persuaded by the *Schmitz* court's reasoning that the pre-conviction restraint provision, 21 U.S.C. § 853(e), and the "relation-back" doctrine, 21 U.S.C. § 853(c), were intended by Congress to apply, and, consequently, do, in fact, extend, to subsection (p) property. Reading the "relation-back" and restraint provisions in a more restrictive manner not only would exalt form over substance, but would undermine "the Government's legitimate interests at the inception of forfeiture proceedings [ ] to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 58, 114 S.Ct. 492, 503, 126 L.Ed.2d 490 (1993) (as quoted in *Schmitz*, 153 F.R.D. at 141). The Government is thus statutorily

---

**3.** The Third and Fifth Circuits have rejected this interpretation of the CCE forfeiture statute. *See United States v. Floyd*, 992 F.2d 498 (5th Cir. 1993); *Assets of Martin*, 1 F.3d 1351 (3d Cir. 1993).

empowered to restrain the properties now owned by Diane Scardino if it can demonstrate to the Court's satisfaction that each of those properties was transferred to, or nominally purchased by, Diane Scardino in an attempt by Paul Scardino to shield his assets from forfeiture. *See United States v. Moya–Gomez,* 860 F.2d 706, 723 n. 18 (7th Cir. 1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). ("The purpose of [§ 853(c)] is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not 'arms' length' transactions.")

■ The Government does, in fact, make a strong preliminary showing that "sole" ownership of nine of the ten properties at issue was given to Diane Scardino by Paul Scardino to keep those properties out of the Government's reach. According to the Government, grand jury subpoenas were served on the schools involved in the indicted offenses on June 12, 1992; at that time, Mark L. Rosenbloom, who accepted service of the subpoenas as legal counsel for the schools, was informed by Assistant U.S. Attorney Susan Cox that Paul Scardino and Salvatore Scardino were the targets of the Government's investigation. Not coincidentally, the Government argues, a mere eleven days later, on June 23, 1992, Paul Scardino divested himself of his ownership interests in at least three of the subject properties. Three months later, Paul Scardino quit-claimed three more of the subject parcels to Diane Scardino. Two of the remaining properties were acquired well after Paul Scardino received notice of the Government's investigation, and, not surprisingly, those parcels were titled in Diane Scardino's name.

The Government further notes that it is highly unlikely that Diane Scardino possessed, or possesses, the personal assets with which to purchase the subject properties for value or to pay the mortgages on those prop-

erties, as her tax returns show her earnings to have been a mere $9,000 in 1986, $10,000 in 1987, $13,593 in 1988, $14,000 in 1989, $1,500 in 1990 and $3,000 in 1991. The Government thus concludes that (1) the subject properties were "given" to Diane Scardino, or were purchased in her name, by Paul Scardino in an attempt to avoid forfeiture, and/or (2) the subject properties remain, in reality, the assets of Paul Scardino, Diane Scardino's sole ownership being a mere "smokescreen." *See Infelise,* 938 F.Supp. at 1369 (criminal defendant deemed true owner of property purchased by nominal or straw owner with defendant's money, such that property subject to forfeiture); *United States v. Messino,* 917 F.Supp. 1307 (N.D.Ill. 1996) (assets held by defendant's son held forfeitable where son found merely to be defendant's nominee).

The Court finds that the Government adequately has shown nine of the ten properties at issue to be potentially forfeitable as substitute assets under the CCE forfeiture provision and sufficiently has demonstrated the need to preserve those assets' value through the filing of *lis pendens* notices.[4]

■ The Government has failed to make the requisite showing of fraud with respect to the tenth property owned by Diane Scardino—10138 Hartford Ct., Schiller Park, IL—, however. By the Government's own admission, the Hartford Ct. property was purchased on December 12, 1991—more than six months prior to the Government's disclosure that Paul Scardino was the target of a criminal investigation—and has, at all times, been held in trust for the sole benefit of Diane · Scardino until her death. While Paul Scardino retains power of direction over the trust, this fact alone appears insufficient to render him the "true" owner of the property. Thus, the Hartford Ct. parcel likely is not forfeitable substitute property under 21 U.S.C. § 853(p), and, accordingly, the Government's filed notice of *lis pendens* as to that property is unwarranted.[5]

---

4. As pointed out by the Government, the Supreme Court has recognized that *lis pendens* notices are less restrictive than, and, therefore, often preferable to, restraining orders. *See*

*James Daniel Good Real Property,* 510 U.S. at 62, 114 S.Ct. at 505.

5. While the Court agrees with the Government that third-parties generally may not litigate their

Finally, while Diane Scardino appeals to this Court to void the *lis pendens* notices on three of the affected parcels—612 Piper Lane, 5210 N. Reserve Ave., and 5240 N. Reserve Ave. (collectively, "the Three Parcels")—, regardless of the technical legality of those notices, so as to permit Diane Scardino to sell those parcels unencumbered and to fund her defense, the Court declines to take such action for three reasons. First, as indicated by the foregoing discussion, the Court presently voids the notice of *lis pendens* filed as to the Hartford Ct. property, thus providing Diane Scardino with at least one valuable asset with which to support her defense. Second, the Government adequately has demonstrated the need to maintain the *lis pendens* notices on the subject properties in order to assure that sufficient assets remain to cover the potential $1,280,000 forfeiture judgment against Paul Scardino; the Court cannot know, and will not attempt to guess, the potential market value of the subject properties on some indeterminate future date, and, consequently, the Court will not force the Government to bear the risk that, without the Three Parcels, sale of Diane Scardino's properties would yield far less than the potential judgment amount. Third, as correctly noted by the Government, Diane Scardino could render the *lis pendens* notices unnecessary merely by agreeing to escrow $1,280,000. This money could come from the Scardino's unrestrained assets, from the Government authorized sale of some of the subject properties, or from some combination of the two. Yet, regardless of the source, once sufficient monies are escrowed, the need for any remaining *lis pendens* notices on Diane Scardino's properties will be eliminated, and Diane Scardino can use her remaining parcels as she pleases—including to fund her defense.[6]

interests in property owned by a forfeiture defendant prior to the entry of an order of forfeiture, this is not the situation currently before the Court. Diane Scardino does not seek to litigate her interest in property owned by Paul Scardino, but, rather, she challenges the Government's filing of *lis pendens* notices with respect to properties now owned exclusively (at least in title) by her. Under these circumstances, such a challenge seems both statutorily and constitutionally appropriate. *See Schmitz*, 153 F.R.D. at 138;

*CONCLUSION*

For the foregoing reasons, the Court grants Diane Scardino's motion to void the *lis pendens* notice filed by the Government against 10138 Hartford Ct., Schiller Park, IL. The Court denies Diane Scardino's motion to void the *lis pendens* notices filed by the Government against the remaining nine parcels ostensibly owned by Diane Scardino and identified in the indictment as substitute assets of Paul Scardino.

*United States v. Real Property in Waterboro*, 64 F.3d 752, 755 (1st Cir.1995); *United States v. Riley*, 78 F.3d 367 (8th Cir.1996).

6. Significantly, Diane Scardino has failed to make the necessary showing that she possesses no assets other than the subject properties with which to pay her attorneys. *See Moya–Gomez*, 860 F.2d at 706.