UNITED STATES of America

v.

Martin W. SIEGAL and Alden H.
Fradkoff and Ann Rochelle
Siegal, et al., Defendants.

Criminal Nos. 97-10002-PBS-1, 97-10002-
PBS-2 and 97-10002-PBS-7.

United States District Court,
D. Massachusetts.

June 5, 1997.

Melissa Bayer Tearney, Peabody & Brown, Boston, MA, for Martin N. Siegal.

Earle C. Cooley, Cooley, Manion, Moore & Jones, Boston, MA, John J. McGlone, III, Gianrusso, Norton & McGlone, P.C., Quincy, MA, for Alden H. Fradkoff.

Michael Kendall, McDermott, Will & Emory, Boston, MA, for Ann Rochelle Siegal.

J.W. Codinha, Peabody & Brown, Boston, MA, for Jeffrey Sales, Inc.

James Rehnquist, Ernie DiNisco, Richard L. Hoffman, U.S. Attorney's Office, Boston, MA, for U.S.

## ORDER RE: DEFENDANT ANN RO-CHELLE SIEGAL'S MOTION FOR FURTHER RELEASE OF ASSETS (Docket No. 184)

SARIS, District Judge.

Defendant Ann Rochelle Siegal has filed a motion for release of three assets which were restrained pursuant to 18 U.S.C. § 1963(d)(1)(A) by a post-indictment court order dated January 6, 1997. After three hearings, on January 28, 1997, February 5, 1997 and March 20, 1997, and review of the affidavit of defendant Ann Rochelle Siegal, this Court *ALLOWS* the motion in part.

### BACKGROUND

In the Indictment returned on January 3, 1997, the grand jury charged defendants Martin Siegal ("Siegal") and Alden Fradkoff ("Fradkoff") with racketeering and racketeering conspiracy, in violation of 18 U.S.C. § 1962, and with criminal forfeiture, pursuant to 18 U.S.C. § 1963. The grand jury also found probable cause to forfeit certain specific listed assets.

Defendant Ann Siegal is the wife of defendant Martin Siegal and the sister of defendant Alden Fradkoff. She worked as an employee of Jeffrey Sales, the alleged racketeering enterprise. She is charged as a co-conspirator in Count Three of the Indictment (18 U.S.C. § 371—Conspiracy to Violate 18 U.S.C. §§ 2314–15). However, she is not charged in the racketeering counts.

Following the filing of the Indictment, another judge of this Court issued a restraining order pursuant to 18 U.S.C. § 1963(d)(1)(A) based on an *ex parte* application and allowed the United States' motions for issuance of notices of *lis pendens* with respect to the real properties named as forfeitable in the Indictment. The assets which Ann Siegal asks this Court to release were named in the Indictment.

### DISCUSSION

Asserting the rights of third parties Rose Fradkoff, defendant's 82 year old mother, and Lesley Siegal, defendant's disabled daughter, the defendant challenges the seizure of the funds in joint accounts on the ground that the seized funds belong to the third parties and come entirely from "clean sources." Defendant also challenges the seizure of her own funds which are commingled in an account with her husband, a RICO-defendant. She claims that these funds were derived from life insurance benefits after the death of her son. She argues that this Court has the discretion to modify or deny a government motion for a restraining order pursuant to 18 U.S.C. § 1963(d)(1).

The government contends that this Court has no discretion to modify the restraining order with respect to a claim that assets listed in the indictment are not forfeitable, except to the extent constitutionally mandated by the due process clause. Due process concerns are not implicated in the circumstances of this case, it argues, because it has already voluntarily released $135,000 in restrained funds, none of the parties has demonstrated she is suffering true financial hardship, and a post-trial statutory hearing is

available.[1]

### 1. *The Legal Standard*

█ As a threshold matter, this Court must determine whether it has the statutory or constitutional authority to permit an interested third party to challenge a restraining order based on an indictment before the entry of an order of forfeiture. The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1963(d)(1) sets forth the ancillary, post-conviction procedure by which third parties (other than the RICO defendant) may claim interests in forfeited property. Generally, third parties may not litigate their interests in property owned by a forfeiture defendant prior to the entry of an order of forfeiture. *United States v. Scardino,* 956 F.Supp. 774, 780 n. 5 (N.D.Ill. 1997).

Defendant argues that she has the right to challenge the restraining order on the ground it affects property interests not available for forfeiture prior to this post-trial proceeding. This argument rests on the permissive language in 18 U.S.C. § 1963(d)(1) which provides:

> Upon application of the United States, the court *may* enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property.... for forfeiture under this section ...

(Emphasis added). The analysis of this "may" language must begin with the twin Supreme Court cases construing the identical language in the drug forfeiture statute, 21 U.S.C. § 853(e)(1) in the context of challenges by RICO defendants whose property was restrained. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2667, 105 L.Ed.2d 528 (1989) and *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). Rejecting the argument that the word "may" embodies "traditional principles of equity," the Supreme Court narrowly construed the forfeiture section to mean only that "the trial court 'may' enter a restraining order if the United States requests it, but not otherwise, and it is not required to enter such an order if a bond or some other means to 'preserve the availability of property described in subsection (a) of this for forfeiture' is employed." *Id.* at 612, 109 S.Ct. at 2665.

Not content with this crabbed interpretation of the trial court's equitable discretion, the Supreme Court further cautioned that this discretion must "be cabined by the purposes for which Congress created it: 'to preserve the availability of property for forfeiture.' " *United States v. Monsanto,* 491 U.S. at 615–16, 109 S.Ct. at 2665 (1989). The only light at the end of the forfeiture tunnel for defendant is the language in *Monsanto,* which involved a restraining order issued pursuant to an *ex parte* application, flagging potential procedural due process concerns: "We do not consider today, however, whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed." *Id.* at 615 n. 10, 109 S.Ct. at 2666 n. 10.

The First Circuit has addressed the court's statutory discretion to modify restraining orders in the context of an innocent third party burdened by a restraint preceding an order of forfeiture. *See United States v. Real Property in Waterboro,* 64 F.3d 752, 757 (1st Cir.1995) (construing § 853(e)). Relying on the legislative history of the RICO statute, the First Circuit concluded that a third party with an interest in property is not precluded from participating in a hearing on the restraining order. *Id.* at 754. Further, a court may elect to hold a hearing after the initial entry of the order, and to modify the restraining order or vacate an order which has been shown to be "clearly improper (e.g., where information presented at the hearing shows that the property restrained was not among the property named in the indictment)." *Id.* at 756. Stressing that at such a hearing the court has no statutory authority to entertain "challenges to the validity of the indictment," *id.,* it described the prudential concerns a trial court must consider:

---

1. The government is not contesting the defendant's standing to press her mother's and daughter's interest in the joint accounts. It also con- cedes that Ann Siegal has the rights of a third-party claimant insofar as the RICO forfeiture and restraining order are concerned.

We acknowledge that it may be difficult in some cases to establish the proper limits of third-party participation in restraining order proceedings. On the one hand, premature attacks upon the validity of the indictment—the type of argument made by the [third parties]—are clearly barred. On the other hand, prudential arguments concerning the burdens of restraint are clearly permitted by the statute, which recognizes the due process concerns that are triggered by judicial orders aimed at third parties. Some arguments may not fall neatly on either side of the line. In *United States v. Regan,* 858 F.2d 115, 121–22 (2d Cir.1988), for example, the third party claimant, a partnership whose partners included the criminal defendants, was permitted to challenge the potential forfeitability of partnership assets under RICO's forfeiture provision, albeit without disputing the factual allegations of the indictment. *See also United States v. Wu,* 814 F.Supp. 491, 494 (E.D.Va.1993) (speculating that the third-party spouse of the defendant might be entitled to intervene in restraining order proceeding in order to contest the breadth of the order).

*Id.* Like the Supreme Court, the First Circuit flagged the procedural due process issues raised by the RICO statute.

> Specifically, the [third parties] do not argue, and we do not consider whether the Due Process Clause may sometimes require that interested parties be given an opportunity to challenge a restraining order, *on the merits of the indictment if necessary,* before the entry of an order of forfeiture ...

*Id.* at 757 (emphasis added).

Other courts since *Waterboro* have upheld the right of third parties to challenge post-indictment restraints or encumbrances with respect to their properties prior to conviction. *See United States v. Riley,* 78 F.3d 367, 369 (8th Cir.1996) ("Before a preconviction restraint may issue, the government must demonstrate at a hearing that the RICO defendant is likely guilty and that the property to be restrained will be subject to

criminal forfeiture."); *See United States v. Scardino,* 956 F.Supp. 774, 780 n. 5 (N.D.Ill. 1997) (holding that a third party challenge to the government's filing of *lis pendens* notices with respect to properties now owned exclusively by her is both "statutorily and constitutionally appropriate"). No court, however, has fully addressed the contours of a pre-conviction challenge to a post-indictment restraining order substantially affecting property interests of third parties where that property is specifically listed as forfeitable in the indictment.

 Here, because of the complexity of this case involving twelve defendants and thousands of pages of documents, by agreement of all defendants, the case will not be tried until October 1997. That means that the third parties cannot raise a statutory challenge to the restraint on property which they claim derived from "clean sources" for another six months. I conclude that the due process clause requires me to afford these third parties a timely pretrial opportunity to challenge the restraining order as "clearly improper" on the ground the property was not available for forfeiture. *See United States v. Crozier,*[2] 777 F.2d 1376, 1382–84 (9th Cir.1985) (§ 853(e)(1)(A) violates due process by not guaranteeing third parties or criminal defendants an opportunity to challenge a post-indictment restraining order until after forfeiture has been ordered). While recognizing the extremely narrow range of my equitable discretion under RICO, I further conclude that I have the statutory discretion to modify the restraining order if it is "clearly improper" in light of the congressional goals of preserving only that property which is available for forfeiture.

### 2. *The Claims*

#### a. *Rose Fradkoff*

 Ann Siegal's affidavit establishes the following. Rose Fradkoff has approximately $9,800 in a World Savings account in Florida, held in both her name and the defendant's. Since the account was opened in October, 1995, she has deposited a total of $23,943 into

---

**2.** Although *Crozier* pre-dates *Monsanto* and *Caplin,* it was cited in *Waterboro,* 64 F.3d at 756, and has continuing vitality with respect to its discussion of the procedural due process analysis.

the account. Of these deposits, defendant has introduced undisputed evidence that $17,342 come from her monthly social security checks that were directly deposited into the account.

Defendant claims that her mother is entitled to at least $7,100, or 73% of the $9,800 because that represents the percent of deposits that consisted of social security checks. The government argues that it is entitled to at least $5,757.03, the lowest balance in the account since it was opened in late 1995, because those funds were not derived from Social Security payments. *See United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1158–60 (2d Cir.1986) (holding government entitled to the benefit of the "first-in, last out" rule with respect to funds remaining in commingled account).

As the government has presented *no* evidence of a legal claim to $4,043 derived exclusively from social security checks ($9,800–$5,757), the Court concludes its seizure was clearly improper and orders it released to Rose Fradkoff. With respect to the remainder, defendant has not demonstrated the seizure was clearly improper. A statutory post-conviction ancillary hearing will suffice.

### b. *Aunt Charlotte's Bequest (U.S. Trust CD 0472019369)*

■ Defendant has put forward evidence of the following. After defendant's Aunt Charlotte H. Siegal died, defendant learned that Aunt Charlotte had put defendant's name on an account worth $13,000. After learning of the bequest, defendant made her daughter the account's beneficial owner. These monies were eventually transferred to a certificate of deposit at the U.S. Trust Company, certificate number 0472019369, in the names of defendant and Lesley R. Siegal. Defendant contends that Lesley Siegal has suffered financial hardship as a result of the restraining order because she subsists primarily on social security disability. The government contends that the conclusory al-

legation of hardship should not be credited because this Court has already released substantial funds in which Lesley had a nominal interest.

Relying on the indictment, the government presents no evidence that these funds came from the alleged RICO enterprise, or that any other funds, tainted or otherwise, were placed in the account. Thus, commingling is not an issue here. Defendant's affidavit addresses the issues raised in the letter dated January 31, 1997 (Gov.Ex. A).

Accordingly, this seizure was clearly improper and the Court orders these funds released to Lesley Siegal, or, if necessary, a guardian on her behalf.

### c. *Nuveen Bonds*

■ Defendant's affidavit establishes the following. In March, 1983, defendant received $50,000 in life insurance proceeds after her son Jeffrey was killed. She invested this money into two Nuveen bond accounts, $25,000 in the names of Ann and Lesley Siegal, and $25,000 in the names of Ann and Martin Siegal. An additional $35,000 worth of Nuveen bonds was purchased in the names of Ann/Martin in 1983 and 1986. The $25,000 invested in the names of Ann/Martin from the proceeds of Jeffrey's life insurance policy thus constitutes 41.67% of the total $60,000 invested in Nuveen bonds in the names of Ann/Martin. These bond funds automatically reinvested into a Nuveen reinvestment account (# 0029260269),[3] now valued at $152,000.[4] Defendant seeks to release $63,333.00—or 41.67% of the $152,000.

Defendant contends that a denial of the use of her son's life insurance proceeds for use as living expenses and the cost of her defense would violate her due process rights, and that the Court need not reach the issue of financial need when a restraint lacks a factual basis. The government contends that, absent a showing of dire financial need, which may necessitate an earlier due process hearing, the defendant must wait for a post-

---

3. The proceeds of the Ann/Lesley bonds were reinvested in a separate account. These funds have already been released.

4. This includes $11,000 left of the original $25,000 investment purchased with the proceeds of

Jeffrey's life insurance; $139,000 in the reinvestment account # 0029260269, which comes from the reinvestment of all four Ann/Martin bond purchases, and $1,400 left of a $5,000 investment in 1986 in another bond fund.

trial ancillary hearing to determine which portion, if any, of the monies in the commingled accounts should not be forfeited.

The Ann/Martin Nuveen bond fund differs from the accounts that the defendant held jointly with her mother and daughter insofar as the defendant's husband, Martin, is named as a RICO defendant. The government, through its indictment, has established probable cause to believe a nexus exists between the monies deposited in the Ann/Martin Nuveen bond funds and the alleged RICO violations. *See Waterboro,* 64 F.3d at 756 ("[T]he indictment itself establishes the merits of the government's case.") As a result, pre-trial restraint of these assets is proper.[5] *See In re Assets of Martin,* 1 F.3d 1351, 1360 (3d Cir.1993) (government must show nexus between restrained property and RICO allegations). Any challenge to the restraint of the assets is a frontal assault on the validity of the indictment, which is impermissible under *Waterboro.*

Defendant contends, correctly, that the "mere[ ] pooling of tainted and untainted funds in an account does not, without more, render that account subject to forfeiture," *United States v. Tencer,* 107 F.3d 1120, 1134 (5th Cir.1997). Nonetheless, several courts have upheld the "forfeiture of entire balance of accounts containing both tainted and untainted funds," on the theory that a "defendant had pooled the funds to disguise the nature and source of his scheme." *id.* (citing cases). Because the defendant's insurance proceeds were commingled with the allegedly tainted money of a RICO defendant, a final determination as to which portion, if any, should not be forfeited will require a detailed accounting analysis. That is best carried out if and when the RICO defendant is convicted and a jury includes these assets in its special forfeiture verdict against him. The three

pre-conviction hearings afforded defendant by this Court meet any procedural due process concerns, particularly in light of the available full-blown post-conviction hearing and the lack of any immediate dire personal financial need. Accordingly, the Court chooses not to exercise its discretionary authority to modify the restraining order.

### ORDER

The Court orders the following funds to be released:

(1) U.S. Trust D 0472019369 to Lesley Siegal.

(2) $4,043.00 to Rose Fradkoff in the World Savings Account in Florida (Account No. 0091601019763).

(3) Otherwise, Defendant's motion for further release of assets (Docket No. 184) is *DENIED.*

---

**5.** The circuit courts are divided over the question of whether substitute assets may be subject to pre-conviction or pre-indictment restraints. *See e.g. In re Assets of Martin,* 1 F.3d at 1358 (substitute assets may not be subject to pre-conviction or pre-indictment restraint); *United States v. Riley,* 78 F.3d 367, 371 (8th Cir.1996) (RICO "does not authorize preconviction restraints on substitute assets."); *United States v. Ripinsky,* 20 F.3d 359, 362 (9th Cir.1994) (21 U.S.C. § 853 does not authorize pretrial restraint on substitute assets); *United States v. Floyd,* 992 F.2d 498, 502

(5th Cir.1993) (same). *But see In re Billman,* 915 F.2d 916, 921 (4th Cir.1990) (substitute assets can be preserved by restraint upon showing that assets forfeitable under § 1963(a) are unavailable), *cert. denied sub nom McKinney v. United States,* 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991). Because the Indictment has asserted a nexus between the Ann/Martin Nuveen bond fund assets and the alleged RICO violations, we need not here resolve the issue of pretrial restraint of substitute assets. *In re Martin,* 1 F.3d at 1360.